In the Matter of the Application of the INTERNATIONAL RAILWAY COMPANY, Petitioner, for a Certiorari Order Directed to THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent. (Case No. 8011.)

CITY OF BUFFALO and Others, Intervenors.

Third Department, November 2, 1934.

*Killeen & Sweeney* [*Henry W. Killeen* and *James C. Sweeney* of counsel] for the petitioner.

*Charles G. Blakeslee,* for the respondent.

*Halpern & Friedman* [*Philip Halpern, Milton H. Friedman* and *George Clinton, Jr.,* of counsel], for the intervenors Frank E. Freedman and others.

*George L. Grobe, Corporation Counsel,* for the City of Buffalo, *amicus curiæ.*

HILL, P. J.   This is a review of a determination of the Public Service Commission dismissing the petition of the International Railway Company presented pursuant to section 50-a of the Public Service Law for an order permitting it to operate motor buses in substitution for cars upon tracks and supplemental thereto in the city of Buffalo.   The petition was dismissed solely for the reason that the resolution consenting to the plan adopted by the common council of the city of Buffalo had not been approved by a majority of the electors of the city.   This the Commission determined to be necessary under section 410 of the Buffalo charter.   Section 50-a of the Public Service Law does not require a referendum vote upon the consenting resolution.

The Buffalo charter is a local law adopted by the electors at a special election, held August 29, 1927.   (See Local Laws, 1932, pp. 21, 100.)   The section here involved reads:

" § 410.   Public utility franchises.   No franchise or permission to occupy or use any of the streets, highways, bridges or public places for the purpose of installing or extending a public service utility therein, except permits for the construction of switches and sidings, shall be valid until it has been granted by the council and thereafter approved by a majority of the electors of the city voting thereon at a general election or at a special election ordered by the council."

The City Home Rule provision in the Constitution and the statutes passed thereunder give to every city the right to enact local laws concerning the management and use of its streets. In the exercise of this power the city may not recapture franchise rights earlier granted to and used by a public utility corporation. Full power is not granted a city to frame its own government in every particular. (*Browne* v. *City of New York*, 241 N. Y. 96.) The field within which it may legislate is limited to the specific subjects enumerated in section 3 of article 12 of the Constitution, and when a new charter is to replace an earlier one enacted by the Legislature, there may be included " any provisions of the existing charter of such city deemed necessary to make a complete charter." (City Home Rule Law, § 20.) And no local law " shall supersede any provision of an act of the Legislature relating to the property, affairs or government of cities which provision in terms and in effect applies alike to all cities." (City Home Rule Law, § 12.)

Section 50-a of the Public Service Law, applying alike to all cities and every part of the State, empowers the Public Service Commission, if convinced that public interest will be served, upon the application of any street railroad corporation, to authorize the substitution of motor buses for cars upon tracks and the operation, of motor buses supplemental thereto. The section further requires that " such an application for such an order, however, shall not be made unless the common council, or other legislative governing body * * * of each city * * * affected * * * shall have consented to such substitution or such supplemental operation by resolution, a certified copy of which shall be presented with the application." This application deals both with the substitution of motor buses for cars upon tracks and the running of buses over new lines supplemental thereto. Leave to substitute buses for cars on a line already operated is not the granting of a new right or franchise to use the streets. It is rather a modification of the old franchise permitting a change in the method of operation. To determine whether cars or buses will better serve the public on congested streets, on those having heavy grades or generally, requires the exercise of expert judgment. The relative expense of the two modes is an economic and managerial problem. The Public Service Commission and its agents have the requisite technical knowledge to pass on these questions. The common council possesses information as to transportation needs in the entire city, while the individual voter has little knowledge concerning these matters except as to the needs in his immediate neighborhood. Without doubt, were the matter to be submitted to popular vote, the result would be regarded as final and binding, and the public would lose the benefit of the expert

knowledge possessed by the Commission and the council. This the courts have regarded as undesirable. (*Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 416.) The petitioner should be continued in the beneficial enjoyment of contract rights existing under its franchise without an affirmative popular vote. Its enjoyment should continue though the obsolete methods of transportation named in the franchise be replaced by modern ones unless some right of the public is interfered with, and unless the utility's affirmative servitude over the streets is increased. It would hardly be said that the rights of the traveling public or the comfort of those dwelling adjacent to the street would be affected unfavorably by the substitution of pneumatic tired wheels for iron ones jolting over rail joints. The supplemental lines are incidental to the present system, making the entire plan a single project. All cities in the State have the same problem as Buffalo concerning the change from cars operated on tracks to buses. A general statute to permit these changes has been enacted by the Legislature, and local laws may not supersede it. The Buffalo local law in effect substitutes a popular vote for the resolution of the council prescribed by the general law. It is more than a limitation upon the mode and manner of adopting the resolution. (*Matter of McCabe* v. *Voorhis, supra*, 416.)

" The voters may not curtail the delegated powers of their representatives by direct action on matters of policy." (*Matter of Oystermen's Dock Co.* v. *Downing*, 258 N. Y. 156, 160.)

The determination should be annulled.

RHODES, CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the Commission for consideration upon its merits.