In the Matter of the Application of LOCKPORT LIGHT, HEAT AND POWER COMPANY and NEW YORK STATE ELECTRIC AND GAS CORPORATION, Petitioners, for a Certiorari Order against MILO R. MALTBIE and Others, as Public Service Commissioners of the State of New York and as and Constituting the Public Service Commission of the State of New York, Respondents.

Third Department, May 10, 1939.

*Warnick J. Kernan* and *Killeen & Sweeney* [*Henry W. Killeen* of counsel], for the petitioners.

*Gay H. Brown, Counsel to the Public Service Commission* [*J. Herbert Gilroy* of counsel], for the respondents.

HILL, P. J. An order made by the Public Service Commission on December 5, 1929, permitted the Lockport Light, Heat and Power Company to transfer its franchises, works and system used in connection with the sale of electricity, gas and steam to the New York State Electric and Gas Corporation. Each was an affiliate of the Associated System, and the transfer was made, it is said, in furtherance of a policy of consolidation. The New York company owned all of the voting stock of the Lockport company. The consent of the Public Service Commission was given on the following condition, contained in the order: that " the entries to be made on the books of the * * * New York State Electric and Gas Corporation reflecting the acquisition of the assets of the Lockport Light, Heat and Power Company shall be based upon original cost of construction of said assets to be hereafter determined by this Commission." On the same day the two corporations, acting through their respective vice-presidents, in compliance with a provision of the order filed with the Commission the following: " [The two corporations] hereby accept an order entered by the Public Service Commission under date of December 5, 1929." (Cf. *People ex rel. Iroquois Gas Corp.* v. *Public Service Commission*, 264 N. Y. 17.) Thereafter the Commission, by an order dated December 19, 1933, amended March 12, 1935, required the New York company to strike $990,943.48 from the capital account. We are reviewing the two latter orders.

Some of the items which the orders directed to be stricken from the capital account are not related to " original cost of construction " mentioned in the order permitting the transfer. The opinion of the Commission contains a recital: " The computation of *depreciation on a straight-line basis* by the Commission's engineering division resulted in an increase in accrued depreciation * * * of $328,476.58," and entries reflecting that decrease in the capital account were ordered made. Also, it was directed that there be stricken from the books of the company items amounting to more than $350,000, representing property which the Commission said had

been, or should be, withdrawn from service. There was also eliminated items for interest, taxes during construction, and other organization expenses, aggregating about $200,000, most of which had been placed in the capital account and against which securities had been issued pursuant to earlier orders made by the Commission. The remainder was made up of items deducted under the " original cost " theory and amounts paid to affiliated companies for materials and services and organization expenses, also $31,250, part payment of the purchase price of a small company which the Lockport company had purchased many years before with the approval of the Commission. Many of the other items detailed had been approved by earlier orders of the Commission and securities based thereon had been issued and sold to the public with like approval. A further assignment of error in the order arises from the following facts: Under the rules of the Commission, the Lockport ccmpany maintained the capital account of its steam department separate from that of its electric department. The order requires that items representing plant and equipment used jointly by the electric and steam departments, aggregating $289,924.90, carried in the electric department account, be transferred therefrom to the account maintained in reference to the steam department.

The Commission seems to have given scant consideration to *People ex rel. Iroquois Gas Corp.* v. *Public Service Commission* (*supra*), which was decided on February 27, 1934. This may be explained by the fact that the order herein requiring the deletion from the capital account was made on December 19, 1933; however, the amended order was made on March 12, 1935. In the *Iroquois* opinion it is stated, concerning the power of the Commission to annex conditions to the transfer: " No power to annex conditions to a consent is conferred in express terms. Since the power to grant consent includes the power to withhold consent, it is plain that the Commission may, at least, make its consent conditional upon change in the terms of the contract of purchase." The consideration to be received by the transferor in the matter under review is hardly mentioned in this entire record. The conditions prescribed by the Commission in no way relate to the terms of the contract under which the property is to be acquired by the New York company, but deal entirely, as in the *Iroquois* case, with the entries to be made upon the books of the purchasing company. Quoting further from the *Iroquois* opinion, " So, too, the Public Service Commission might, perhaps, have power to couple its consent with any direction which it would have independent power to make. Here the condition imposed is different. It does not

change the terms of the transfer or the manner in which the property will be operated after transfer; it requires the purchaser to make an entry upon its books which the Commission would have no power to direct unless it has plenary power to annex any conditions it may see fit to its consent. The question before us is whether the Commission has such plenary power." Later in that opinion it is determined that the Commission did not have plenary power.

The order of the Commission fails to comply in many respects with the decision in *Matter of New York Edison Co.* v. *Maltbie* (271 N. Y. 103). That case dealt with the " independent power " as that term is used in the *Iroquois* case (*supra*) of the Commission to make rules and regulations. It was there determined (question 2) that the Commission had no power to direct corporations to rewrite their operating property (fixed capital) accounts upon the basis of " original cost," and (question 3) no power to direct corporations to transfer the excess of " book cost " over what is determined to be " original cost " to a suspense account, and (question 5) no power to require a corporation to adopt a " straight-line " method of accounting for depreciation, and (question 6) no power to require a corporation to write off " capital stock expense," as shown by Commission's account 142, which includes " all expenses in connection with the issuance and sale of capital stock." The orders under review do each of these inhibited things. The Commission would have " independent " power to require this purchaser to make book entries showing the price which it paid for this property. (*Matter of New York State Electric & Gas Corp.* v. *Maltbie*, 243 App. Div. 655; appeal denied, 267 N. Y. xxxix.) The power of the Commission was not increased through the acceptance of the conditional order by the vice-presidents of petitioners. Property and constitutional rights could not be destroyed, abrogated or waived by the corporate officials.

It is unquestioned that the Commission has power to require that book entries shall reflect transactions truthfully. It has been said that the Commission " *might, perhaps,* have power to couple its consent with any direction which it would have independent power to make " (*Iroquois* case, *supra*), and if, under that authority, the Commission finds firm footing for determining in one proceeding whether its consent for a transfer of property is in the public interest and whether new and changed entries shall be made in the records of the purchasing corporation, the two unrelated subjects may be determined jointly, otherwise the transfer should be approved or disapproved dependent upon the

public interest. Directions concerning the entries to be made in the capital and other accounts as permitted by statute and the authorities cited may be given by the Commission at any time.

As to the direction that entries representing certain properties be transferred from the electric to the steam department, the Commission might, perhaps, have power to allocate the entries between the departments to reflect the proportion of benefit which each department receives from the property involved. It seems that the steam department is less profitable than the electric, and if book value is to be used in fixing a rate base for temporary rates, this property, which is used and useful in part, at least, in the electric department, by an arbitrary entry, should not be excluded from the property upon which a return is to be had.

The orders should be annulled and reversed and the matter remitted to the Public Service Commission for action in accordance with the foregoing.

McNAMEE, CRAPSER and BLISS, JJ., concur.

Orders annulled and reversed, on the law and facts, and matter remitted to the Public Service Commission for action in accordance with the opinion, with fifty dollars costs and disbursements.