In the Matter of the Application of ROCHESTER GAS AND ELECTRIC CORPORATION, Petitioner, Respondent, for an Order Pursuant to Article 78 of the Civil Practice Act against MILO R. MALTBIE and Others, Commissioners, Constituting as Such the Public Service Commission of the State of New York and State Division of the Department of Public Service of the State of New York, Appellants.*

Third Department, March 6, 1940.

*Revg. 172 Misc. 359.

*Gay H. Brown, Counsel to Public Service Commission of the State of New York [Sherman C. Ward* and *Porter L. Merriman* of counsel], for the appellants.

*Goodwin, Nixon, Hargrave, Middleton & Devans [T. Carl Nixon* of counsel], for the respondent.

HILL, P. J.   Rochester Gas and Electric Corporation, respondent, on November 30, 1938, presented its petition to the appellant, The Public Service Commission, asking consent and approval under the Stock Corporation Law (§ 38) to the filing of a certificate reducing by $3,000,000 its capital, allocated on its books to common stock, which amount was to be transferred on the books of the company to an account to be designated " Contingency Reserve."   The petition was denied by the Commission, which appeals from an order of the Albany Special Term annulling that determination.

As of the date of the petition presented to the Commission, in addition to 775,914 shares of common stock outstanding of the stated value of $14,383,208, respondent had issued nearly $24,000,-000 par value of preferred stock; also there was a funded debt in excess of $37,000,000.   The petition which initiated this review under article 78 of the Civil Practice Act contains the history of the several classes of stock, particularly the common.   In 1925 there were outstanding 72,482 shares of common stock, each of the par value of $100.   During that year, ten shares for one were issued, and in 1929 this was increased by 51,094 new shares, the total of its stated value on the books being $8,883,208.   As of December 31, 1930, by resolution of the directors, $5,500,000 was transferred from two surplus accounts to capital applicable to common stock, making the aggregate stated value $14,383,208.   The Commission was asked to approve the transfer from the capital account to the contingency account of $3,000,000, being a part of the $5,500,000 last mentioned.   The statutory authority for this transfer is found in section 36 of the Stock Corporation Law which provides: " A stock corporation may effect one or more of the following purposes:   *   *   *

" (G) To reduce its capital so as to eliminate therefrom any or all of the amount thereof previously transferred thereto by resolution of the directors;   *   *   *."

It appears from respondent's petition and exhibits that the amount of the reduction is " to be transferred upon the books and records of the corporation to a reserve to be designated ' contingency reserve;' the reserve so created to be used principally

for the purpose of offsetting any deficiency in the corporation's reserve for depreciation which may arise as a result of a depreciation study which is now in progress by the corporation," and in the application made to the Commission for a rehearing, "that no portion of the amount of said capital reduction (all of which is to be transferred to said contingency reserve) will be used directly or indirectly for any purpose other than adjusting the depreciation reserve, without the consent and approval of the Commission."

Section 38 of the Stock Corporation Law provides: "The following provisions shall be applicable to a certificate under section thirty-six.

"1. A corporation subject to the provisions of the Public Service Law shall not file such a certificate, nor shall the Secretary of State accept or file such a certificate, unless it shall have endorsed thereon the consent and approval of the Commission having jurisdiction of such corporation."

It is the position of the respondent, and the court below determined, that such a consent and approval was "at most a merely formal matter" and that if the certificate was regular in form indicating a proper resolution by the board of directors and compliance with all statutory requirements, the approval by the Commission was perfunctory.

The Legislature has delegated powers and duties to the Public Service Commission in connection with the capital accounts of utility corporations, and the stocks and securities issued and sold. (Public Service Law, § 69.) The scope of this power given by the section as it earlier read was discussed in *People ex rel. D. & H. Co.* v. *Stevens* (197 N. Y. 1, 10), "We do not think the legislation alluded to was designed to make the commissioners the financial managers of the corporation, or that it empowered them to substitute their judgment for that of the board of directors or stockholders of the corporation as to the wisdom of a transaction, but that it was designed to make the commissioners the guardians of the public by enabling them to prevent the issue of stock and bonds for other than the statutory purposes." All of the common stock of respondent is owned by a holding company. Much of the preferred stock and many of the bonds have been sold to the public. It was suggested on behalf of the Commission upon the argument that, even though the present officers have stated that the surplus liberated by this proposed transfer would not be used for dividends, this representation might not be followed by new officers who could be elected at any time, as all the voting stock of the corporation is owned by a holding company organized under the laws of Delaware and not subject to the control of the Commission.

The Commission has heretofore approved the issuance for sale to the public of the bonds and preferred stock of this corporation. The liens and rights of the owners of these securities in the fixed capital are prior to those of the owners of the common stock, and would be adversely affected if a portion of the assets of the corporation now a part of fixed capital was distributed as dividends to common stockholders. The approval by the Commission of the issuance of these bonds and stocks would have little meaning if thereafter the assets they liened or represented could be diverted to other classes of securities. Portions of section 38 of the Stock Corporation Law were enacted for the protection of those who had invested in or were creditors of certain governmentally controlled private corporations. Subdivision 1, earlier quoted, was enacted for the protection of investors in utility securities; subdivision 2 for the benefit of depositors, policyholders and stockholders of moneyed corporations, for thereunder a certificate reducing the capital stock of a banking corporation may be filed only when approved by the Superintendent of Banks, and of an insurance corporation when approved by the Superintendent of Insurance. Approval thereunder should be given or withheld by the named public officials after a determination as to the rights of interested parties. That determination is quasi judicial and subject to review under article 78 of the Civil Practice Act.

The order annulling the determination of the Commission should be reversed and the petition dismissed, upon the ground that the order of the Commission was not arbitrary or capricious, and did not encroach upon the rights of the respondent.

CRAPSER, HEFFERNAN, SCHENCK and FOSTER, JJ., concur.

Order reversed on the law and facts, with ten dollars costs and disbursements.