In the Matter of the Application of INTERNATIONAL RAILWAY COMPANY, Petitioner, under Article 78 of the Civil Practice Act, to Review a Determination of the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, Made July 25, 1941, in Public Service Commission Case No. 10419.

Third Department, July 1, 1942.

*Franchot, Runals, Cohen, Taylor & Rickert* [*James C. Sweeney, General Counsel*], for the petitioner.

*Gay H. Brown [George H. Kenny, Laurence J. Olmsted* and *Sherman C. Ward* of counsel], counsel to the Public Service Commission.

FOSTER, J. After a number of hearings, at which a great mass of testimony was taken, the Public Service Commission has ordered petitioner, the International Railway Company (hereafter called I. R. C.) to cancel a management contract which it had with Mitten Management, Inc. (hereafter called Mitten). This is a proceeding, under article 78 of the Civil Practice Act, to review the Commission's order and the determination underlying the same.

The I. R. C. is a street railway corporation, and owns a large system of railroad and bus lines in the cities of Buffalo, Niagara Falls and elsewhere in the counties of Erie and Niagara, N. Y.; and it also owns and operates a toll bridge between the village of Lewiston, N. Y., and the village of Queenston in the Province of Ontario, Canada.

Mitten is a personal service corporation, organized under the laws of the State of New Jersey, and has its principal office for the transaction of business in the city of Philadelphia. Dr. Arthur A. Mitten, William K. Myers, Joseph A. Queeney and Coleman J. Joyce were the principals of this organization when the contract in question was made, and owned all of its outstanding stock. Mr. Joyce has since died, and we are informed that no successor has been or will be appointed to succeed him. The system and properties of I. R. C. are managed by Mitten through its principals, with the exception of Mr. Joyce's services since June 6, 1941, and have been so managed for a number of years. Aside from acting as principals of Mitten these men have other occupations from which they derive substantial remuneration.

The contract which the Public Service Commission has ordered canceled was entered into on the 1st day of January, 1939. It provided that on and after such date Mitten should have complete charge and supervision of the business, system and properties of I. R. C., subject to the supervision and direction of the board of directors of I. R. C., and to such lawful regulations as might be exercised over the latter by any governmental authority. It required the I. R. C. to pay Mitten at the rate of twenty dollars an hour for the time each principal of the latter devoted to the services of I. R. C., and such proportion of Mitten's office expense as the total amount of time devoted by the principals of Mitten to the service of I. R. C. bore to the total amount of time devoted by such principals to the affairs of all other clients to whom Mitten rendered management service. As a matter of fact, however, I. R. C. is the only management client of Mitten and hence the former is bound under the contract to pay all of the latter's office expense,

including rent. All services under the agreement were to be performed by principals of Mitten, and their traveling expenses were to be paid by I. R. C.

This contract was disapproved by the Public Service Commission after that body had instituted a proceeding on its own motion to inquire into the affairs of I. R. C. The inquiry was directed, among other things, "* * * as to whether any *management*, construction, engineering or similar *contract* entered into by the said company is unjust, unreasonable, improper and whether the consideration to be paid under such contract is unjust or unreasonable or exceeds the reasonable cost of performing such service, and if so determined to take such action as is determined to be necessary and proper; * * *." After hearings were had and the Commission had reviewed the evidence taken it was determined that the Mitten management contract with petitioner was not in the public interest for reasons which may be briefly stated as follows:

(1) Because it was unnecessary for the proper management of I. R. C. and imposed an unnecessary expense.

(2) Because the charge to I. R. C. was not the cost to Mitten for the service of each principal, and such charge was not shown to have been the reasonable cost of performing the service.

(3) Because Mitten dominated the board of directors of I. R. C. and could perpetuate its position as service manager and continue to increase its fees for the service of principals by simply charging more time.

(4) Because under Mitten management, and among other things, the rail property of I. R. C. has seriously deteriorated; there has been little improvement in revenue since 1933; the business of I. R. C. has been conducted at an annual loss and a large deficit has resulted; large deferred and contingent liabilities have accrued, a sufficient reserve for depreciation has not been maintained, and generally the financial structure of petitioner has reached a serious condition.

On the basis of findings and conclusions, embodying the foregoing facts, and in considerable more detail, the Commission made its order disapproving the contract and directing its cancellation forthwith.

Petitioner takes the position, *first*, that the Commission lacked jurisdiction to find that the contract was not in the public interest because that part of the statute under which the Commission purported to act is unconstitutional and void; *second,* that, in any event, the Commission had no authority to direct cancellation because the statute confers only the power to disapprove; *third,*

that petitioner was denied due process of law because the order rests upon purported facts not legally before the Commission; *fourth*, that petitioner sustained the burden of proving that the charge for management service did not exceed the reasonable cost thereof, and the Commission erred in finding to the contrary; *fifth*, that there was no competent proof to support the findings of the Commission, but if it is determined that there was such proof then such findings were nevertheless against the weight of evidence; *sixth*, and in conclusion, that the action of the Commission was arbitrary and capricious.

In reality three main issues are involved. *First*, is the statute under which the Commission acted constitutional? *Second*, has the Commission power to cancel as well as disapprove? *Third*, are the findings underlying the determination of the Commission against the weight of evidence?

The purported authority under which the Commission acted is subdivision 3 of section 110 of the Public Service Law, which provides: " No management, construction, engineering or similar contract, hereafter made, with any *affiliated interest*, as hereinbefore defined, shall be effective unless it shall first have been filed with the Commission, and no *charge* for any such management, construction, engineering or similar service, whether made pursuant to *contract* or otherwise, shall exceed the *reasonable cost* of performing such service. In any proceeding to determine the reasonable cost of such charge or service the burden of proof shall be on the company. If it be found that any such contract is not in the public interest, the Commission, after investigation and a hearing, is hereby authorized to disapprove such contract." (Emphasis supplied.) Mitten is conceded to be an " affiliated interest " within the meaning of the statute because it has officers and directors in common with petitioner, and, as will be hereafter shown, was considerably more.

The argument of petitioner that the Commission lacked jurisdiction to make the determination under review rests chiefly upon the theory that the statute, in so far as quoted, represents an attempted unlawful delegation of legislative power because it fails to define " public interest," and omits to fix an ascertainable standard to guide and limit the Commission in determining what may or may not be in the public interest. That the term " public interest " is too vague, uncertain and indefinite to serve as a guide for administrative action. Secondarily, petitioner urges that the power conferred on the Commission to make its own unrestricted choice as to those contracts it will investigate is also an invalid delegation of authority. And it points out that the statute does

not mandate the Commission to investigate all management contracts, but leaves the Commission free to determine whether or not it will investigate any contract. This, so petitioner argues, is the grant of a power to discriminate between utilities, and to apply this standard to one and a different standard to another.

As to the first proposition, regarding the term " public interest," petitioner does not deny the accepted principle that the Legislature may delegate authority to an administrative body to carry out legislative policies, providing a proper standard is established as an administrative guide, and it would be superfluous to cite authorities sustaining this principle. Petitioner's charge is limited to an alleged insufficiency of the term to be used as an administrative standard within the principle mentioned. It must be conceded that a criterion of " public interest," standing alone, presents a standard of immense and varied implications. And if it can only be interpreted as setting up a standard so embracive and indefinite as to confer unlimited power, then, of course, it runs counter to the rule against the complete delegation of legislative power. (*Schechter Poultry Corp.* v. *United States,* 295 U. S. 495; *Matter of Small* v. *Moss,* 279 N. Y. 288.) But in our opinion it need not be and should not be so interpreted. Rather, it should be construed with reference to the general purposes and the subject-matter of the Public Service Law, and if it may be logically found that the criterion of " public interest " is directly related and limited to the general purposes of such law then it is a sufficient guide. ( *N. Y. Central Securities Corp.* v. *United States,* 287 U. S. 12; *People ex rel. Iroquois Gas Corp.* v. *Public Service Comm.,* 264 N. Y. 17.) The Legislature is not required to furnish details but only to provide a general guide for administrative action.

We think it is plain enough that the term " public interest " is directly related to and limited by the main purposes of the Public Service Law. These purposes, so the Legislature has once said, are " to guarantee to the public safe and adequate service at just and reasonable rates, to the stockholders of public service corporations, a fair return upon their investments, and to bondholders and other creditors, protection against impairment of the security of their loans." (Laws of 1929, chap. 673, § 3.) Obviously the end sought by the Legislature by the enactment of that portion of section 110, previously quoted, as related to the main objects of State regulation, as just stated, was to curtail and prevent unnecessary, improper or excessive expenditures on the part of utilities to affiliated interests. Public interest is surely related to such prevention and curtailment as to business between those concerns which hold public franchises and their closely related

affiliates. It should be emphasized that the statute provides for interference with contracts only when *affiliates* are involved.

The primary standard of such interest, as fixed by the Legislature to guide the Commission, was not only permissible but inevitable from either a practical or a legal viewpoint. The Legislature could hardly have assumed to specify in advance of every situation involving affiliates, details connected with improper and excessive expenditures. The power given to the Commission in this instance is analogous to its power to fix rates on the basis that such rates shall be " reasonable." This standard, although open to the same charge of being merely a generality, has been upheld. (*Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Co.*, 191 N. Y. 123.) Instances throughout the Public Service Law where the Commission is empowered to apply the standard of " public interest " might be multiplied, and the term has been repeatedly referred to without criticism or the suggestion that it represented an unlawful delegation of power. (*People ex rel. Iroquois Gas Corp.* v. *Public Service Comm.*, *supra*; *Matter of International Ry. Co.* v. *Public Service Comm.*, 242 App. Div. 300; *Matter of Tracy Development Co.* v. *Maltbie*, 259 id. 75; affd., 283 N. Y. 500; *Matter of Lockport L., H. & P. Co.* v. *Maltbie*, 257 App. Div. 11.) Indeed it may be said that if the Commission were deprived of the power to make decisions on the basis of " public interest," with reference to the several sections of the Public Service Law where that term appears, only the shadow of regulation would be left. Recourse may be had to other examples of valid standards couched in general terms but enough has been shown to indicate our belief that it was not beyond the power of the Legislature to provide the standard under attack. We are not unmindful that a different view has been expressed in an adjacent jurisdiction (*Bell Telephone Co. of Pennsylvania* v. *Driscoll*, 50 Dauphin Co. Rep. 66; affd., 343 Penn. St. 109; 21 A. [2d] 912), but this decision, we think, is not in conformity with the reasoning expressed by the courts of this State and those of the United States.

As to the petitioner's secondary argument on this phase of the case, that the discretion committed to the Commission to determine when investigations shall be made, renders the statute invalid, it need only be said that this is no longer an open question. There have been definite rulings to the contrary holding that the delegation of such discretion is not an invalid delegation of legislative authority. (*Matter of Kings County Lighting Co.* v. *Maltbie*, 244 App. Div. 475; *Bronx Gas & Electric Co.* v. *Maltbie*, 268 N. Y. 278.)

Petitioner's second point, that the Commission was without jurisdiction to direct cancellation of the contract, is based upon the language of the statute. (Pub. Serv. Law, § 110, subd. 3.) Express power to cancel is not within its language. The Commission " * * * is * * * authorized to disapprove such contract." Cancellation is not a necessary concomitant of disapproval, so petitioner argues, and hence the power to direct cancellation is not to be implied. This argument leads petitioner to the conclusion that the power of approval or disapproval relates only to accounting practices. That is, if the contract is disapproved payments made thereunder cannot be charged to fixed capital or operating expense without the consent of the Commission, and the latter's power is limited to accounting practices.

We think this argument is not supported by a realistic view of the statute as related to the evils it was designed to suppress. The clear intent of the statute was to restrain contracts between public utilities and affiliates when such contracts were found to be contrary to the public interest. The power to direct cancellation is a necessary concomitant of the power of disapproval if the Commission is to effectually carry out the purpose of the statute. The Legislature can hardly have intended that a contract against public interest should be left hanging in the air. There is no prohibition against the exercise of implied authority under such circumstances. (Pub. Serv. Law, § 4; *People ex rel. Municipal Gas Co.* v. *Public Service Commission*, 224 N. Y. 156.) In so far as the position of Mitten is concerned it should be observed that its contract was entered into subject to the power of the Commission under the Public Service Law by virtue of the provisions of such law and also under the terms of the contract itself. As against this it possessed the right of review, if it chose to exercise it.

The matters of substance left for review concern chiefly the sufficiency of the proof before the Commission to support its determination. We do not overlook petitioner's contention that it was denied due process of law on the claim that the order of the Commission rests upon purported facts not in evidence. We are unable, however, to attach much weight to this argument. The statements complained of relate generally to a comparison of Mitten's achievements with other systems in lessening accident costs, solving labor difficulties, the accrual of liabilities, and the reorganization of railway systems into bus systems. For most of the Commission's comments on these matters support may be found in the evidence, but, in any event, the statements complained of were largely expository and not essential findings necessary to authorize a determination.

On the broad issue of public interest the Commission has found that Mitten, beyond being an affiliate, actually dominated and controlled I. R. C. This finding is amply supported by the evidence, and we can see no merit whatever to the claim that this condition may be considered only as a jurisdictional fact in establishing that Mitten was an affiliate. In our view the fact of domination is relevant and important in passing upon the ultimate issue of public interest. It has a vital bearing on any determination as to whether the contract in question was made and continued primarily for the benefit of Mitten or in the interest of I. R. C.— and hence the interest of the public.

The facts are illuminating. I. R. C. has a board of nine directors. Four of these are the principals of Mitten. Three others are former employees of Mitten and were placed with I. R. C. by Mitten. Of these three, one is the president of I. R. C., and another is its secretary-treasurer. The executive committee of I. R. C., which exercises the powers of the board of directors when the board is not in session, has for its chairman a Mitten principal. Of the other three members two are Mitten principals and the third is the president of I. R. C. There is also an informal management committee consisting of Mitten principals plus officers of the I. R. C. If this set-up does not establish domination and control on the part of Mitten it would be difficult to describe one which did. Petitioner merely points out in this connection that under a voting trust agreement, controlling 134,203 shares of I. R. C. out of a total of 183,172 shares, of the three voting trustees named only one is a Mitten principal; and hence the other two voting trustees could at any annual meeting elect a new board of directors and oust Mitten from control. There is some doubt as to this, owing to other inter-relationships, but, assuming such to be the case, the fact remains that Mitten has not been ousted and still dominates and controls I. R. C., and has done so for many years. Such a situation justified the Commission in scrutinizing carefully the management service performed by Mitten and the cost thereof.

The statute requires that petitioner assume the burden of showing that the cost of management service by Mitten was the reasonable cost thereof. The cost referred to is not the cost of obtaining the service of Mitten, but the reasonable cost to Mitten, as the affiliated interest, of performing such service. The distinction is of decisive importance. The Commission has found that petitioner did not sustain this burden. Petitioner takes the position, *first*, that the evidence does not sustain this finding, and, *second*, that even if the charge for service was excessive this furnishes no ground for

disapproval of the contract as not being in the public interest, and that excess cost should be taken care of as a matter of accounting. The last argument rests upon the same reasoning urged by petitioner that the Commission has only the power to disapprove and not to cancel, and which we have previously discussed. We reiterate our view that, since the statute prohibits an affiliate from making charges in excess of reasonable cost, the purpose thereof cannot be effectuated merely by accounting devices, but only by disapproval and cancellation of the contract. As to the findings that petitioner has not sustained the burden to justify the cost as reasonable, or to show that the charges made were the actual cost to Mitten, we think there is sufficient evidence to sustain them. We cannot, without undue prolixity, specify items in detail. However, the record reveals that the expenses of Mitten principals, for traveling and otherwise, were wasteful and extravagant, and included improper items. We may not interfere with the judgment of the Commission that they were not reasonable as applied to the cost of service if any ordinary standard is to be taken as a guide. In addition, adequate accounts were not kept, and it is now impossible to tell with any precision the expenses actually paid by I. R. C. for Mitten. Also, the contract provided that I. R. C. was to pay twenty dollars per hour for the time of each principal of Mitten devoted to management service. Except by opinion testimony, not very convincing and which the Commission was by no means bound to accept, it was not shown that this charge was reasonable or that it represented the cost to Mitten. Under the statute it had to be both. Cost should be judged by some objective standard, but on the facts presented here such a judgment is not possible. The principals of Mitten own the corporation and each receives a distributive share of the corporation's net income, voted as salary, but in effect a division of net proceeds on the basis of stock ownership. There is no fixed obligation on the part of Mitten to pay its principals any fixed amount, and there is no objective method of ascertaining the cost of their services, except to say whatever price Mitten fixes for their services is the cost to Mitten. This is equivalent to saying whatever price the principals fix is the cost, for they are Mitten. If this reasoning is to be accepted, and since they control I. R. C., there is nothing, so far as we can see, to prevent them from fixing a price at any figure they choose, and justifying the same as the cost to Mitten. This, of course, is an extreme view, but it illustrates perfectly the situation of obscurity, to say the least, which the facts present and which the statute was designed to prevent. We find no reason to disturb the finding of the Commission that petitioner failed to

sustain its burden with reference to cost, and in addition we think the whole contractual situation justifies a determination that the contract was not in the public interest.

We do not propose to discuss in detail the other matters raised. The Commission has found that under Mitten's management the business of I. R. C. has suffered and that its rail property has seriously deteriorated. All of the findings made as to these matters have evidence to support them. It has been shown beyond question that the business of I. R. C. has been conducted at an annual loss, that a deficit has resulted, and that large deferred and contingent liabilities have accrued. All of the matters covered by these findings involve only questions of fact, and, while our views as to some of them may differ from those of the Commission's, we may not substitute our judgment. The Commission's conclusion that the contract is not in the public interest because it is unnecessary for the proper management of I. R. C., and an unnecessary expense, is supported generally by the evidence, and for the reasons to which we have briefly referred. Beyond the arguments discussed the fundamental contention of petitioner is that the Commission, by its determination, has unlawfully assumed the prerogative to invade the field of management and overrule the discretion of the officers and directors of petitioner in the management of its affairs.

We think, quite to the contrary, that the Commission has only and properly sought to relieve petitioner from management and control by other sources, and to that end has directed the severance of a contractual tie which no impartial and detached observer would qualify as being in the public interest under the circumstances disclosed. We, therefore, find no legitimate ground for interference.

The determination and order should be confirmed, with fifty dollars costs.

HEFFERNAN and SCHENCK, JJ., concur; HILL, P. J., and CRAPSER, J., dissent upon the following grounds: The Public Service Commission was without power to direct petitioner to cancel the contract with Mitten Management, Inc. The Legislature did not purport to grant this power or prerogative to the Public Service Commission, and, had it done so, the grant would have been of doubtful legality.

Determination and order confirmed, with fifty dollars costs.