Poster, J.
The Rochester Transit Corporation and the City of Rochester have appealed from an order of the Supreme Court which denied an application of the transit corporation to restrain the Public Service Commission from fixing rates for transportation service in the city of Rochester, and dismissed the proceeding on the merits. The order sought, which the court below refused to grant, was in the nature of prohibition under article 78 of the Civil Practice Act. The transit corporation contended below, and in this court, that it is operating under a valid service-at-cost contract with the City of Rochester, and that until this contract expires the. Commission has no jurisdiction over its rates.
A serviee-at-cost contract between a municipal corporation and a street surface railroad corporation is defined in subdivision 9 of section 49 of the Public Service Law (L. 1922, ch. 582). This statute also provides that the Public Service Commission may approve such a contract upon prescribed notice to interested parties. The effect of an approval by the Commission is to place the operation of the utility concerned, under the terms of the contract, beyond the jurisdiction of the Commission during the life Of the contract.
On July 16,1920, a service-at-cost contract was made between the City of Rochester and New York State Railways, the predecessor of the present transit corporation. The contract became effective August 1,1920, and was to continue for a period of ten years, with a right on the part of the city to renew it for another ten years. After the amendments to section 49 of the Public Service Law in 1922, the Public Service Commission approved this contract.
In 1929 the New York State Railways went into a receivership in a Federal district court, and thereafter its properties were operated by receivers, or a trustee, until 1937 or 1938. A proceeding for reorganization was instituted under section 77B of the Bankruptcy Act (U. S. Code of 1934, tit. 11, § 207), and in 1937 a plan of reorganization for the,Rochester lines of the New York State Railways was approved by the Public Service *409 Commission and by a Federal court. In 1938 the present Rochester Transit Corporation was formed. The assets of the New York State Railways were transferred to the present transit corporation by order of the Federal court and with the approval of the Public Service Commission.
The City of Rochester never exercised its option to renew the original contract with the New York State Railways, which expired August 1, 1939; but beginning on July 1, 1930, and at various times thereafter, it entered into a series of fourteen short term agreements, some with the receivers of the New York State Railways, and others with the present transit corporation. It is the contention of appellants that these agreements extended the original service-at-cost contract with the city, and that one of the so-called extensions was in effect when the plan of reorganization was approved in 1937. The last agreement was made under date of December 19, 1942, and according to its terms will not expire until December 31, 1947. It is also the position of appellants that the Commission approved the so-called extensions and amendments to the original service-at-cost contract) including the agreement made December 19, 1942; and, in any event, that the Commission is now estopped from denying it has given such approval.
In 1945 the Commission instituted a rate proceeding to investigate the transit corporation’s earnings and its current rates of fare. At the initial hearing the Commissioner presiding announced that the Commission intended to consider forthwith the fixing of temporary rates under section 1.14 of the Public Service Law. Shortly thereafter the transit corporation brought the proceeding which is the subject of this appeal and sought to restrain the Commission from investigating or attempting to fix its rates until the expiration of its last service-at-cost agreement on December 31, 1947.
It is clear that the original contract of July 16, 1920, expired on July 31, 1930. That contract specifically provided that it would expire on the latter date unless the city exercised its option to renew the same for a further period of ten years. The ■city did not exercise the option. Even if it had, the renewal would then have expired in 1940, and the current agreement under which the parties purport to be operating was not entered into until December 19, 1942. It is equally clear that the only service-at-cost contract which has ever been formally presented to the Public Service Commission for approval, in accordance with the requirements of subdivision 11 of section 49 of the Public Service Law, is the original contract of July 16, 1920. When that contract expired there was no longer an effective *410 service-at-cost contract between the parties, and any further contractual relations between the parties necessarily arose out of new contracts (New York Tel. Co. v. Jamestown Tel. Corp., 282 N. Y. 365). Not only is this true as a matter of law but as a matter of fact it appears that some of the subsequent agreements, or alleged extensions, were different in many important and substantial respects from the original contract. Since no formal proceeding was initiated for the approval of any of these agreements the only possible theory upon which it may be held that the Commission approved any of them is the theory of implied approval. The only agreement to which this theory might now be applied, or the doctrine of estoppel invoked, is the current contract made December 19, 1942. All other agreements have long since expired. It is urged by appellhnts that the theory of implied approval, or estoppel, should be applied against the Commission because in collateral proceedings relative to the operation of the transit corporation in the city of Rochester the Commission has recognized the existence of the last extension agreement and hence approved it by implication; or since the parties have acted under permissive orders made in such collateral proceedings that the Commission should now be estopped from denying its approval.
Since December 19, 1942, there have been four proceedings before the Commission relative to the operation of the transit corporation’s lines in the city of Rochester. Two of these proceedings involved the temporary extension of bus routes, and these extensions were requested and permitted on a temporary basis due to war emergency conditions. Another proceeding involved an application for the approval of the transfer of franchises, consents and rights to operate of the Rochester Electric Railway Company to the transit corporation, which owned a controlling interest in the stock of the former company. The other proceeding involved the Commission’s approval of a merger of the East Avenue Bus Company with the transit corporation. In at least one of these proceedings the last extension agreement was commented on at a hearing before the Commission, but in none of these proceedings was the approval of the agreement at issue.
We are thus brought to the contention that because the Commission had notice of the last service-at-cost agreement between the parties, and because it made orders in collateral proceedings after such notice, that it impliedly approved the contract. In our opinion this is not a sound conclusion of law. The Public Service Commission is the delegate of the Legislature in the regulation of rates (Matter of International Ry. Co. v. P. S. *411 Comm., 226 N. Y. 474). It may not divest itself of jurisdiction except in the manner provided by the Legislature, and the statutory procedure as to this exception is specific. If approval of a service-at-cost contract is sought, ten days’ written notice, served in the manner required for the service of a summons, must be given to the other party or parties to the contract. The Public Service Commission has the power to approve such agreement only after proof of such service has been filed (Public Service Law, § 49, subd. 11). It is clear that the statute requires a formal hearing, directed precisely to the issue of approval. It is not difficult to find a reason for such a meticulous requirement. Approval, once given, divests the Commission of its general statutory jurisdiction designed for the protection, of the public; and it was the evident intent of the Legislature that such an important act of divestiture should not be taken except upon specific notice. Moreover an approval by the Commission of any contract which purports to establish rates of fare would undoubtedly constitute a quasi-judicial act, subject to review, and would have to be based upon a finding that the contract was in the public interest, the same as any final order in a rate case. (Matter of Rochester Gas & Electric Corp. v. Maltbie, 258 App. Div. 682, affd. 284 N. Y. 626; Matter of International R. Co. v. Pub. Serv. Comm., 264 App. Div. 506, affd. 289 N. Y. 830; Matter of New York Edison Co. v. Maltbie, 271 N. Y. 103.) In view of these considerations the theory of implied approval is inapplicable.
The same may be said as to the doctrine of estoppel. The Commission is not a private party but an agent of the Legislature exercising a delegated police power. Estoppel does not lie against the exercise of such a sovereign power. But beyond this the elements of estoppel do not appear. No burden rested on the Commission to seek out the extension agreement and have' the parties present the same for approval in conformity with the statute. The parties themselves were charged with notice of the statute, and if they chose to present collateral matters without presenting the contract for approval in the manner required they, and not the Commission, were bound by the limitations of their own procedure. Certainly the Commission was not estopped thereby. It may be pointed out in this connection that the contract in question was not necessarily illegal between the parties even though not presented for approval. The statute does not prohibit such a contract but merely requires approval by the Commission before that body is divested of *412 jurisdiction. There was therefore no imperative” duty resting upon the Commission to inquire into the validity of any extension agreement, despite references made thereto in the course of collateral proceedings, if the rates as specified in tariff schedules appeared to be just and reasonable. It would make no difference how the rates were arrived at providing they appeared to be fair and reasonable. The Commission was not required to make any investigation until the contrary appeared.
The order appealed from should be affirmed.