Morris Eder, J.
Petitioners London Sporting Club, Inc. (herein called “ Club ”) and Stephen Sullivan bring this article 78 proceeding to review a determination of the State Athletic Commission revoking the license of the Club as boxing-promoter and of Sullivan as matchmaker and imposing a $5,000 fine against the Club.
It is necessary, first, to consider a matter of procedure, which also encompasses the nature and scope of the review available in this proceeding.
Although not required by the statute (L. 1920, ch. 912, as amd.) establishing the State Athletic Commission with authority and jurisdiction over all persons licensed to hold or participate in boxing matches, a hearing at which evidence was taken was granted petitioners. They claim, among other things, that there was no competent proof of the facts necessary to authorize the determination (Civ. Prac. Act, §.1296, subd. 6) and that the preponderance of the proof was against the findings made by the commission (§ 1296, subd. 7). On that basis they ask for an order directing the transfer of this proceeding for disposition by the Appellate Division.
Section 1296 enumerates the questions which are to be decided in an article 78 proceeding. Subdivisions 1 to 5-a, inclusive, deal with such matters as compliance by the administrative official with proper modes of procedure and rules of law and are intended to secure the basic rights of petitioners. When the only issues raised are those specified in 1 to 5-a, the section states that Special Term “ shall itself dispose of the cause on the merits ”. The scope of such a review has been generally referred to as deciding only whether the determination was arbitrary or capricious; and if evidence has been taken, whether there was any evidence to sustain it. Such is the limited nature of the review which the Legislature has directed may be exercised in an article 78 proceeding by Special Term.
Section 1296 then provides that where the determination “ was made as the result of a hearing held, and at which evidence was taken, pursuant to statutory direction” and petitioner raises question 6 (competency of evidence) or 7 (sufficiency of evidence), the proceeding must be transferred as to such questions to the Appellate Division. We note that Special Term is thus not granted the power to decide question 6 or 7; and that the Legislature has limited the right of a petitioner to raise question 6 or 7 to determinations where evidence was taken “ pursuant to statutory direction ”. Accordingly, where a hearing- is granted voluntarily or as a matter of favor, a petitioner *434 may not raise either of such questions and Special Term must decide only questions raised which fall within 1 to 5-a.
Conceding, as they must, that a literal construction of section 1296 debars them from raising question 6 or 7, petitioners nevertheless urge that the section should be interpreted or judicially construed to include those determinations, where, as a matter of constitutional right, a full hearing is required notwithstanding the omission to provide for it in the governing statute. Their argument is that a revocation of a license necessary for pursuing an occupation or the imposition of a substantial fine is equivalent to the taking of one’s property, and for that due process under the Constitution requires a fair hearing and a full review. The statute providing such a penalty, they say, must ‘ ‘ implicitly ’ ’ require a hearing at which evidence is to be taken or be held unconstitutional; and, therefore, to avoid unconstitutionality, the court must hold that question 6 or 7 may be raised by a petitioner where a hearing, claimed to have been granted as a matter of favor, but required as a matter of right, has been had.
Petitioners cite Southern Ry. Co. v. Virginia (290 U. S. 190) which I do not regard as applicable. The matter involved was elimination of grade crossings by virtue of a State enactment and the majority simply held that before property could be so taken, a fair hearing was necessary. Although petitioners argue that a $5,000 fine is a deprivation of property, it falls within the category of a disciplinary measure arising out of a licensed activity and not a matter of one’s own property being taken without due process.
Petitioners do not cite Matter of Hecht v. Monaghan (307 N. Y. 461) which, in my opinion, is much closer to the point they attempt to make but is still, on its facts, distinguishable. A licensed hack driver was given a hearing though the statute did not require it. The court held that the license being his means of livelihood, he had a vested right to a hearing meeting minimum constitutional requirements; that ‘ ‘ Where the exercise of a statutory power adversely affects property rights — as it does in the present case — the courts have implied the requirement of notice and hearing, where the statute was silent ” (p. 468). A new hearing was ordered.
It may be that in such a situation, where a hearing has been given a hack driver, and he raises question 6 or 7, that the proceeding would be transferable to the Appellate Division to determine these questions, since the statute would have to be read as requiring a hearing, thereby being viewed as “ pursuant to statutory direction ”. Special Term may not, in any event, *435 consider either of these questions; if the proceeding were not transferable, then it might be argued that the hack driver would be denied a complete judicial review and thus deprived of a substantial right.
On the other hand, it can be said that all that is constitutionally required is notice and a fair hearing, and once that has been had, judicial review may constitutionally be limited to questions of arbitrariness and observance of proper procedures and rules of law.
I do not need to pass on this hypothetical question, since I hold that persons do not have vested rights to licenses issued to them under the Boxing Law and are not entitled to hearings as a matter of right. Boxing matches are illegal except as authorized by the commission. A licensee cannot have a property right in an illegal occupation, but must be regarded as having been given a privilege exercisable only within the rules of the commission (Matter of Eboli v. Christenberry, 114 N. Y. S. 2d 311). When disciplined, he may obtain a review by the courts of the commission’s determination but only on questions 1 to 5-a, despite the fact that a hearing may have been granted him.
The argument that the $5,000 fine imposed involves a property right, as to which a hearing was required, with the consequent right to raise question 6 or 7 in the Appellate Division, is clearly untenable, unless question 5-a be deemed unconstitutional. That question permits Special Term to decide, however small or large the fine, whether “ the respondent abused his discretion in imposing the measure of punishment or penalty or discipline involved ”. Before it was added in 1955, it was held (Matter of Sagos v. O’Connell, 301 N. Y. 212) that the extent of a disciplinary penalty was solely in the discretion of the administrative body and not subject to review even by Special Term. It is now by specific enactment reviewable under question 5-a, which disposes of that issue.
I, therefore, conclude that petitioners may not raise question 6 or 7 and the proceeding is not transferable to the Appellate Division; and that my decision must necessarily be confined to a review as to whether the commission was arbitrary in its determination or in the penalty imposed.
Petitioners were duly served with detailed specifications and obtained a complete hearing. The commission rendered its “ Findings, Decision and Order ”, a comprehensive determination covering each of the specifications, and concluding in the statutory language (L. 1920, ch. 912, § 17 as amd. by L. 1952, ch. 666) that the licensees had been “ guilty of an act detri *436 mental to the interests of boxing * * # generaEy or to the public interest, convenience or necessity.”
The commission took note of the fact that in November, 1954, Sullivan’s license was suspended and the Club fined a substantial sum for violating rules of the commission, particularly with regard to unauthorized payments out of purses to the Boxing Managers Guild.
The present hearing was occasioned principally by acts done by petitioners in attempting to circumvent a rule of the commission promulgated December 15, 1955 notifying all licensees who continued to be members of the Boxing Guild that they would be subject to disciplinary action. The commission found that petitioners attempted to enter into contracts to remove the televised boxing matches from St. Nicholas Arena, New York, to Baltimore so that boxing managers affiliated with the guild could retain the benefits of the televised fights and still continue, in violation of the commission’s rule, as members of the guild. In effect, petitioners were thereby helping those who intended to flout the authority of the commission.
The other specifications concern such matters as negotiations with unlicensed boxing managers; payment not to a boxer but in cash to his unlicensed manager; transactions with a former licensee whose Ecense had been revoked. A supplemental specification was added after the first hearing to the effect that in December, 1955 and January, 1956 Sullivan withdrew about $66,000 from the Club’s funds in New York and deposited it in New Jersey to the credit of a recently organized corporation. Petitioners failed to go forward with satisfactory evidence to explain this substantial withdrawal made just after the Boxing Guild rule was enacted. The commission concluded that the funds were intended to be paid, at least, in part, to persons not licensees.
The treasurer of the Club, William Gilzenberg, had originally been included in the specifications with Sullivan, but he resigned as treasurer and surrendered his license. The commission observed that Sullivan attempted to throw all responsibility upon Gilzenberg.
A great deal of latitude and discretion must be accorded a commission which is responsible to the People of the State for the maintenance of fair dealing, honesty, and clean sport in a field which has in the past been infested with undesirable elements. Its rules should be enforced by the courts unless shown to be clearly arbitrary. Its determinations, particularly when supported by evidence, should be upheld.
*437 This determination was not arbitrary or capricious. Nor can it be said that discretion was abused in revoking the licenses and fining the sum of $5,000. The commission was entitled to consider that the November, 1954 punishment had produced no real effect upon petitioners and that the maximum penalty was now called for, in order to serve as a lesson to others who might be disposed to abet the violation of the commission’s rules as well as end any further attempts on petitioners ’ part to circumvent its rules and authority. The fine, it may be observed, is the maximum allowable by the statute (L. 1920, ch. 912, § 16 as renum. by L. 1952, ch. 666); and the amount is not disproportionate to petitioners’ financial interests in this field. The punishment may be severe but, I cannot say, wholly unjustified.
The petition is accordingly dismissed and stay vacated.
Settle order.