In the Matter of Silvia T. Calzadilla, Respondent, *v.* Edwin B. Dooley et al., Constituting the New York State Athletic Commission, Appellants.

Fourth Department, January 18, 1968.

*Louis J. Lefkowitz, Attorney-General (Winifred C. Stanley* and *Ruth Kessler Toch* of counsel), for appellants.

*Lutwack, Feldman & Burke (David P. Feldman* of counsel), for respondent.

Goldman, J. The New York State Athletic Commission (hereinafter called " Commission ") appeals from a denial of its motion to dismiss respondent's petition which seeks to annul the Commission's refusal to issue a professional wrestling license. In support of its position the Commission raises various objections in point of law and cites as its authority the decision of this court in *Matter of Whitehead* v. *Krulewitch* (25 A D 2d 956), in which we affirmed the dismissal of the petition of a female wrestler who sought to be licensed, as does the petitioner-respondent.

The Commission denied petitioner's application on the ground that State law does not permit women to wrestle or be licensed. Subdivision 14 of subchapter A (19 NYCRR 205.15) of the rules

promulgated by the Commission provides that " No women may compete in any wrestling or boxing contest or exhibition and no women may be licensed as a boxer, wrestler, manager or second ". The Commission contends that its determination was proper for three reasons: first, that regulation and control of professional sports exhibitions are within the scope of the State's police powers; second, that in promulgating rule A-14 the Commission acted properly within its authority and lastly, that the rule is not arbitrary, capricious or unreasonable, for the Legislature, in granting the Commission " sole control, authority and jurisdiction over all licenses " in a restricted field, has set up adequate standards for the issuance of such licenses. The petitioner counters with the claim that the denial of the license " violates the constitutional rights of females in adherence to Rule A-14, an unreasonable exercise of the police power of the State ".

The principal issue is whether there has been a valid delegation of legislative power. The prohibition against invalid delegation of authority is deeply embedded in Federal constitutional law. " Congress cannot delegate legislative power [even] to the President " (*Schechter Corp.* v. *United States,* 295 U. S. 495, 537). This same principle is also rooted in the law of New York. The clearest expression of this doctrine in our State is found in *Packer Collegiate Inst.* v. *University of State of N. Y.* (298 N. Y. 184, 189), where the court held that the Legislature, in the exercise of the police power, has a limited right to regulate private schools and that it cannot delegate to any official an unlimited and undefined power to make any regulations he desires and to issue or deny licenses upon the school's compliance with such regulations. While declaring the statute unconstitutional, the court recognized the authority of the Legislature to make valid and legal delegation of power when proper standards and guidelines are provided. It specifically so stated in *Matter of City of Utica* v. *Water Control Bd.* (5 N Y 2d 164, 169) where, in discussing standards, it said: " That does not, however, mean that a precise or specific formula must be furnished in a field ' where flexibility and the adaptation of the [legislative] policy to infinitely variable conditions constitute the essence of the program.' (*Lichter* v. *United States,* 334 U. S. 742, 785.) " The Supreme Court clearly stated this rule in its earlier decision in *United States* v. *Shreveport Grain & Elevator Co.* (287 U. S. 77, 85) where it wrote: " But Congress may declare its will, and after fixing a primary standard, devolve upon administrative officers the ' power to fill up the details ' by prescribing administrative rules and regulations ". Once the

Legislature has set up these standards for the Commission's guidance it is not only proper but highly essential, if administrative agencies are to operate effectively, that the details and execution be left to the administrator.

The Legislature vested the Commission with the right to make a judgment in determining whether the application by a female for a wrestling license "will be consistent with the public interest, convenience or necessity and with the best interests of * * * wrestling generally". (L. 1920, ch. 912, § 12, as amd. by L. 1952, ch. 666, § 11.) Chapter 137 of the Laws of 1953, amending section 6 of chapter 912 of the Laws of 1920 deals with the scope of the Commission's authority and specifies and defines the Commission's jurisdiction: "The commission shall have and hereby is vested with the sole direction, management, control and jurisdiction over all such boxing, sparring and wrestling matches or exhibitions * * * within the state of New York. The commission is hereby given the sole control, authority and jurisdiction over all licenses to hold boxing, sparring or wrestling matches or exhibitions * * * and over all licenses to any and all persons who participate in such boxing, sparring or wrestling matches or exhibitions, as hereinafter provided."

In issues of this kind there is always the claim, as urged by petitioner, that the delegation of authority by the Legislature is invalid because the Legislature did not set up proper standards. The question, then, is did the Legislature set sufficient standards so that the Commission had the legal authority to promulgate rules for licensing. Section 11 of chapter 666 of the Laws of 1952, amending section 12 of chapter 912 of the Laws of 1920 provides the following standards for the issuance of licenses: "If in the judgment of the commission the financial responsibility, experience, character and general fitness of an applicant * * * are such that the participation of such applicant will be consistent with the public interest, convenience or necessity and with the best interests of boxing or wrestling generally and in conformity with the purposes of this act, the commission may grant a license in accordance with the provisions herein contained." The very same standard of "public convenience, interest, or necessity" was approved in *Federal Radio Comm. v. Nelson Bros. Co.* (289 U. S. 266, 279) which upheld a Federal statute authorizing the Radio Commission to assign frequencies "from time to time, as public convenience, interest or necessity requires". The standards must be interpreted in the light and purpose of the whole act. Applying this principle to the instant case, we find that the standards (and particularly

that of "consistent with the public interest") are not so indefinite as to confer unlimited authority and power (*Matter of International Ry. Co.* v. *Public Serv. Comm.*, 264 App. Div. 506, affd. 289 N. Y. 830).

The history and record of professional wrestling and boxing is, unfortunately, not one to which we can always point with pride and confidence. Justice EDER in *Matter of London Sporting Club* v. *Helfand* (3 Misc 2d 431, 436, affd. 6 A D 2d 775) made this cogent observation with which we certainly concur: "A great deal of latitude and discretion must be accorded a commission which is responsible to the People of the State for the maintenance of fair dealing, honesty, and clean sport in a field which has in the past been infested with undesirable elements. Its rules should be enforced by the courts unless shown to be clearly arbitrary." (See, also, *Rosensweig* v. *State of New York*, 5 N Y 2d 404, 410.) It necessarily follows that since the Legislature has invested the Commission with "the sole direction, management, control and jurisdiction" over licenses to hold wrestling matches, its determination should not be disturbed unless there is an obvious abuse of this vested authority by capricious and arbitrary action. "When a rule is legislative, the reviewing court has no authority to substitute judgment as to the content of the rule, for the legislative body has placed the power in the agency and not in the court. A legislative rule is valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable. The requirement of reasonableness stems both from the idea of constitutional due process and from the idea of statutory interpretation that legislative bodies are assumed to intend to avoid the delegation of power to act unreasonably." (1 Davis, Administrative Law Treatise, § 5.03, p. 299.) (See, also, 1 Benjamin, Administrative Adjudication in the State of New York, p. 294; 1 N. Y. Jur., Administrative Law, § 182.)

Does this discrimination against females violate the equal protection clause of the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York State Constitution? It is of interest that the petitioner does not cite section 291 of the Executive Law which provides that one has a civil right not to be discriminated against because of sex. In *State* v. *Hunter* (208 Ore. 282), the Supreme Court had the very same question before it, although in a different posture. There the female was charged with a violation of the penal statute for participation in a wrestling match in violation of a statutory ban against female wrestling. One who participates in a wrestling match without a license in New York State is

guilty of a misdemeanor (L. 1920, ch. 912, § 27, as amd. by L. 1921, ch. 714; L. 1933, ch. 625, § 3; L. 1947, ch. 810; L. 1948, ch. 754, § 6, as renumbered § 33 by L. 1952, ch. 666, § 32). At page 287 the Oregon court said: " Moreover, there is no inherent right to engage in public exhibitions of boxing and wrestling. Both sports have long been licensed and regulated by penal statute and, in some cases, absolutely prohibited. It is axiomatic that the Fourteenth Amendment to the U. S. Constitution does not protect those liberties which civilized states regard as properly subject to regulation by penal law."

The Fourteenth Amendment does not require that all persons be treated exactly alike. It recognizes that a State may classify its citizens but mandates that the classification should not be arbitrary and that all persons within a class be treated equally. Many cases have withstood attack under the Fourteenth Amendment because of different classifications on the basis of sex. *Goesaert* v. *Cleary* (335 U. S. 464), dealing with the prohibition in Michigan against barmaids, recognized that distinction could be made between the sexes so long as it was reasonable and not arbitrary. In *Matter of Shpritzer* v. *Lang, et al.* (17 A D 2d 285, affd. 13 N Y 2d 744, 746), the First Department in construing the Administrative Code of the City of New York, which provided for only one rank of women police officers, held that this did not make police women ineligible to compete in examinations for the position of police sergeant. The Court of Appeals, in affirming, recognized that there might be an equal protection clause question but stated that it did not reach " the alleged constitutional question ".

The petitioner cites *Hesseltine* v. *State Athletic Comm.* (6 Ill. 2d 129) in which the Supreme Court set aside the denial by the Illinois State Athletic Commission of a female's application for a wrestling license on the ground that the rule as passed by the commission was an invalid usurpation of legislative functions. The distinction between the New York legislative delegation and Illinois is that the Illinois statute failed to give the commission authority to determine the qualifications for wrestling participants. It restricted this authority to persons " properly qualified for the holding of such exhibitions " (Ill. Rev. Stat., 1953, ch. 10 4/5, § 10), the promoter, and not to the wrestler applicant. It is clear that the court would not have held that there was an arbitrary assumption of power by the Commission if the same standards had been established for applicants for licenses as were provided for exhibitors.

It has been argued that females have fared less well under the equal protection clause than have males of certain minority groups which have long been the victims of discrimination. (See

2 Stan. L. Rev. 691.) From the earliest days of our Constitution it was recognized that this clause would not be so applied as to remove all classifications. As was written in *Tigner* v. *Texas* (310 U. S. 141, 147) : " The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same ". Furthermore, the presumption of constitutionality of a classification requires the courts to assume the existence of a reasonably conceivable state of facts to sustain it, and " admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary " (*Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78). It has also been suggested that the Commission's determination is founded on a mid-Victorian concept which females have long since abandoned and which has no place in this enlightened last third of the Twentieth Century. Notwithstanding any personal opinion or attitude we may hold in this respect, there is legal justification and support, under the legislation which created the Commission, for the determination made by it. The order should be reversed and the petition dismissed.

Inasmuch as we have dismissed the petition, the Commission's appeal from the denial of its motion to change the place of trial is now academic.

WILLIAMS, P. J., BASTOW, HENRY and DEL VECCHIO, JJ., concur.

Order denying motion to dismiss petition unanimously reversed, motion granted and petition dismissed, without costs. Appeal from order determining venue dismissed as academic.