**James Earl JOHNSON, Plaintiff,**

**v.**

**Fred T. WILKINSON, Director, Missouri Department of Corrections, Jefferson City, Missouri, et al., Defendants.**

**Civ. A. No. 18389–3.**

United States District Court,
W. D. Missouri, W. D.

June 9, 1970.

———◆———

James Earl Johnson, pro se.

No answer by defendants.

**ORDER DENYING PLAINTIFF LEAVE TO PROCEED IN FORMA PAUPERIS**

WILLIAM H. BECKER, Chief Judge.

Plaintiff, a state convict confined in the Missouri State Penitentiary, has submitted a "complaint and suit for damages" founding the jurisdiction of this Court on the Federal Civil Rights Act, Sections 1981–1988, Title 42, United States Code, and Section 1343 of Title 28, United States Code, and expressly placing venue in the Western Division of this District.

Plaintiff states that, as the result of the erroneous commitment of his brother, Larry A. Hill, aged 16, to the Missouri State Penitentiary (contrary, as plaintiff claims, to Section 216.370, construed

by plaintiff as providing for the commitment of such persons to an intermediate reformatory) defendants are "responsible for the death of Larry A. Hill," who was "stabbed to death" within the penitentiary; and that plaintiff has remained in maximum security confinement, "despite the judgment of * * * Magistrate Court," for the alleged stabbing of one Wendell Williams (although he does not state any dismissal of the "felony charge" by the Magistrate Court). Plaintiff apparently does not seek any relief in respect of his confinement in maximum security, praying only (1) "to proceed in forma pauperis"; (2) "for trial of cause herein by jury"; and (3) "for recovery of $1,000,000 actual damages and $500,000 punitive damages from defendants herein for the death of plaintiff's brother, Larry A. Hill, age 16, caused by reasons aforestated herein."

■■■ Section 1986 of Title 42, United States Code, provides that every person neglecting to prevent the invasions of civil rights mentioned in Section 1985 of the same title "shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act * * * and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased." Section 1985, in turn, among other things, applies to conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." See Section 1985(3). The term "legal representative" has no fixed meaning and does not have the same significance in every case. See 24A Words and Phrases, p. 439. In cases where the federal statutory provisions under the Civil Rights Act do not clearly cover the issue, state law, which is consistent with the Act, is applicable. Brazier v. Cherry (C.A.5) 293 F.2d 401, 409, cert. den. 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed. 2d 136. The Missouri death statute, § 537.080 RSMo, provides as follows:

"Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, which damages may be sued for and recovered

(1) By the spouse or minor children, natural or adopted, of the deceased, either jointly or severally; provided, that in any such action the petitioner shall satisfy the court that he has diligently attempted to notify all parties having a cause of action under this subdivision against any one defendant; or

(2) If there be no spouse or minor children or if the spouse or minor children fail to sue within one year after such death, or *if the deceased be a minor and unmarried, then by the father and mother, natural or adoptive,* who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor; or if the surviving parents are unable or decline or refuse to join in the suit, then either parent may bring and maintain the action in his or her name alone, for the use of both such parents; or

(3) If there be no husband, wife, minor child or minor children, natural born or adopted as herein indicated, or if the deceased be an unmarried minor and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed

according to the laws of descent." (Emphasis added.)

Since it was not clear whether plaintiff was entitled to sue under § 537.080, the Court entered an order on May 26, 1970, requiring plaintiff to show cause in writing within 15 days why he should not be denied leave to proceed in forma pauperis by stating (1) the specific facts showing the liability of each defendant and (2) the names, ages and addresses of all the surviving relatives of Larry A. Hill, including himself.

Plaintiff's response was received in this division on June 4, 1970. Therein, plaintiff stated as follows:

"Your show cause order dated May 26, 1970, I received and it is my intention by means of a personal letter, to show liability of named defendants & also my capacity to sue.

"On the 25th day of November, 1969 I was placed in Maximum Security for an assault on Wendell Williams.

"The victim of the assault recovered & he too, was placed in Maximum Security. On or about March 10, 1970 Williams was released. I appeared in Cole County Magistrate Court on March 11, 1970 and he as a witness declined to name me as his attacker. So the case was dismissed. I returned to maximum security & Williams to the prison population proper.

"Soon after my brother was transferred to the prison tag-plant, *also the work assignment of Williams*. On March 25, 1970 Williams killed my brother in the same aforementioned shop. (Emphasis plaintiff's)

"I maintain the defendants could have and do have within their power the means to have prevented my brother's death. I also maintain it was through gross negligence of the defendants in their official capacity that my brother was killed.

"It is an incidental note that defendant Wyrick (although I have no concrete means of proof) promised to see appropriate steps were taken in protecting my brother. (It is unfounded & unproved but nonetheless, the fact that the whole incident stems from the fact Williams, the older convict, was making threatening advances at my brother, the younger first offender).

"I maintain that Fred T. Wilkinson & Harold Swenson, as director & warden, respectively knew in advance the outcome of the situation mentioned beforehand & in their official capacities failed through neglect to prevent it.

"Defendant Lock through neglect allowed my brother to be assigned the same job as Williams right in the aftermath of Williams (sic) appearance in court.

"The defendant Wyrick, as custody officer is liable for in his official capacity he has the power to prevent Williams & my brother from living in the same environment & it is also within his power to prevent two adversaries from remaining together.

"At no time did anyone attempt to transfer my brother even though he was a first offender, only sixteen years old & the direct cause of an assault upon another inmate." (Emphasis in letter.) (sic)

In regard to his capacity to sue under the Missouri death statute, plaintiff states as follows:

"As to the best of my knowledge I was the acknowledged next of kin at the time of my brother's death. This fact was conveyed to me when MSP officer Garnett notified me of my brothers death. The list of relatives is as follows:

1) Mrs. Anna Hill—3517 Indiana—41—Mother—KCMO

2) Mr. Henderson Hill—Waco, Texas—51—Father

3) Mr. James E. Johnson—Jefferson City, Mo—23, brother

4) Mr. Henderson Hill, Jr.—Camp Pendleton, Calif. 21, brother

5) Mr. Howard L. Hill—home—19, brother

6) Mr. Chester Hill—home—13—brother

7) Mr. Kenneth W. Hill—home—12—brother."

It therefore appears that this claim under the Missouri death statute and Section 1986, Title 42, U.S.C., should be asserted by the mother and father, or one of them as provided in § 537.080(2) and that the plaintiff herein, accordingly, cannot be deemed to be a "legal representative" of the deceased within the meaning of Section 1986, *supra*. Further, this action has been brought in the wrong division of this district under the provisions of Section 1393(a), Title 28, United States Code, which provides that, in actions not based solely on diversity of citizenship, divisional venue is in the division where all defendants reside. Casey v. Ciccone (W.D.Mo.) 306 F. Supp. 698; 1 Moore's Federal Practice ¶ 0.143[4], p. 1563, n. 5 (1969 ed.) This action should therefore be brought in the Central Division of this District by Henderson Hill and Anna Hill, who are entitled to bring the action under the applicable law. Meantime, under the rule of Ivey v. Frost (C.A.8) 346 F.2d 115, that the Court may consider whether a plaintiff states a meritorious cause of action in determining whether he should be granted leave to proceed in forma pauperis, the plaintiff herein should be denied leave to proceed in forma pauperis.

It is therefore

Ordered that plaintiff be, and he is hereby, denied leave to proceed in forma pauperis.