**Lily JAVITS et al., Plaintiffs,**

**v.**

**Harold STEVENS et al., Defendants.**

**No. 73 Civ. 5339–LFM.**

United States District Court,
S. D. New York.

Sept. 24, 1974.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Samuel A. Hirshowitz, First Asst. Atty. Gen., and Shirley Adelson Siegel, Asst. Atty. Gen., New York City, of counsel.

Javits & Javits, New York City, for plaintiffs; George R. Hinckley, Harold J. Smith and Michael B. Sacks, New York City, of counsel.

John G. Bonomi, New York City, for The Ass'n of the Bar of the City of New York, as amicus curiae; Saul Friedberg, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Defendants, the Justices and Clerk of the Appellate Division, First Department, of the Supreme Court of the State of New York (Appellate Division), move to dismiss the complaint in this action for insufficiency. Rule 12(b)(6), Fed. R.Civ.P. Since we have considered material outside the complaint, we will treat defendants' motion as one for summary judgment. Rule 12(b). Plaintiffs cross move, pursuant to Rule 56, Fed.R. Civ.P., for summary judgment on Counts I, II and III of the complaint.

This is an action under the Civil Rights Act, 42 U.S.C. § 1983, brought by the executors of the Estate of Benjamin A. Javits, a New York attorney who died on May 18, 1973, and his widow, children, grandchildren and assignee for injunctive and declaratory relief vacating an order of the Appellate Division, which suspended Javits from the practice of law for a period of three years, effective February 5, 1971.

Benjamin Javits was admitted to the Bar of the State of New York on December 22, 1922 and remained in active practice of law until 1961. During that period, he also authored a number of books, including "Peace by Investment" and "Ownerism."

On October 30, 1969, Javits was served with a petition by the Association of the Bar of the City of New York (Bar Association) to the Appellate Division, seeking "such action be taken as

justice may require" and charging him with:

> "[A]ttempting to perpetrate a fraud upon the Courts of Mexico and the United States by paying monies to Mexican public officials and another Mexican national in order to improperly obtain and subsequently defend a nullification of a Mexican divorce decree . . . .

Javits answered, denying the allegations of the petition, and the matter was referred by the court to George Trosk, as referee, for hearings, which were held on March 23, April 1, and April 17, 1970. Due to ill health, Javits did not testify at these hearings. Following the hearings, Referee Trosk found, in a report dated June 9, 1970, that "the evidence leaves me no alternative but to find, as I do, that the charge [contained in the petition] has been sustained."

The Bar Association then moved to confirm the referee's report, and the Appellate Division, in a *per curiam* opinion, granted the motion and, by order entered January 5, 1971, suspended Javits from the practice of law for three years. Matter of Javits, 35 A.D.2d 442, 316 N.Y.S.2d 943 (1st Dep't 1971).[1]

Javis then moved in the Appellate Division for leave to appeal to the New York Court of Appeals, but leave was denied on March 18, 1971 on the ground that an appeal could be taken as of right. The Court of Appeals, however, dismissed the appeal on May 13, 1971, holding that an appeal could not be taken as of right but granted leave to reargue the appeal in the Appellate Division. 28 N.Y.2d 923, 323 N.Y.S.2d 172, 271 N.E.2d 701 (1971). Javits again moved in the Appellate Division for leave to appeal to the Court of Appeals. Leave was denied by the Appellate Division on October 14, 1971, and a similar motion was denied by the Court of Appeals. 29 N.Y.2d 488, 328 N.Y.S.

2d 1025, 278 N.E.2d 654 (1972). A petition for certiorari to the Supreme Court was also denied on November 6, 1972. 409 U.S. 980 (1972).

Javits died on May 18, 1973, and plaintiffs brought this action on December 6, 1973. Jurisdiction is predicated on the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985; 28 U.S.C. § 1343(c).

The first three counts of the complaint allege that defendants, acting under color of state law, deprived Javits of his right to due process because he "was given no notice or opportunity to be heard" on the charges underlying the order of suspension. Count I, brought be decedent's estate, and Count II, brought by an assignee, allege that book royalties, payable to them, have been reduced because decedent's reputation was injured by the order of suspension. Count III, brought by decedent's widow, children and grandchildren, claims damages to their own reputations as a result of the order of suspension.

In Counts IV and V, all plaintiffs seek a declaratory judgment that § 90 of the New York Judiciary Law (29 McKinney's Consol.Laws 1968 c. 30), as related to §§ 5501 et seq. and 5601 et seq. of the New York Civil Practice Law and Rules (7B McKinney's Consol.Laws 1963 c. 8), is unconstitutional on due process and equal protection grounds.

Defendants raise numerous jurisdictional and procedural questions which must be resolved before considering the merits.

I

Defendants first contend that this action is "moot" because the right to practice law and, consequently, to bring this action is personal and was extinguished by decedent's death. We think this raises questions more of standing than of mootness, although standing may involve discussion of issues of mootness.[2]

---

1. Justice McNally dissented and voted to disbar. 35 A.D.2d at 450, 316 N.Y.S.2d 943.

2. Plaintiffs now appear not to contend that any plaintiffs, other than the executors of

decedent's estate and Eric M. Javits (son and law partner), have standing to bring this action.

■■ We begin with the proposition that one may not sue under 42 U.S.C. § 1983 for deprivation of another's constitutional rights.[3] Since the decedent's relatives and assignee seek relief, in Counts II and III, based solely on violation of the decedent's constitutional rights, not their own, they lack standing to sue under § 1983.[4] Defendants are, therefore, entitled to summary judgment on Counts II and III and on Counts IV and V insofar as the latter counts are asserted by plaintiffs in their individual capacities rather than as the executors of the decedent's estate.

Defendants also contend that the decedent's estate lacks standing to assert the § 1983 claim asserted in Count I because (1) the decedent's death and the expiration of the order of suspension[5] have made the matter moot, and (2) claims under § 1983 do not survive. We disagree.

Defendants cite several New York and federal cases holding that professional disciplinary proceedings are mooted by the death of the professional or the expiration of the punishment imposed.[6] If this were a disbarment or disciplinary proceeding, we would agree that the matter is now moot, but this is an action for injunctive relief under 42 U.S.C. § 1983, based on the alleged deprivation of the decedent's constitutional rights and consequent damage to his estate. Thus, we must look to the cases under § 1983 to determine (1) whether the decedent, had he lived, could have brought this action despite the expiration of the suspension order, and (2) if so, whether the § 1983 claim survives to his estate.

In a series of § 1983 cases involving suspension of students from high schools and universities and their later reinstatement, it has been held that the reinstatement does not moot the controversy because the "collateral consequences" of the suspension may prejudice the students.[7] The rationale of these holdings is derived from Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968),[8] where the Supreme Court held that a prisoner's release from incarceration did not moot his petition for a writ of habeas corpus because the collateral consequences of his conviction, such as loss of the right to vote, continued in effect after his release. 391 U.S. at 237, 88 S.Ct. 1556. Similarly, in the school cases, the fact that a suspension remained on a student's record might have prejudiced him in obtaining future

3. O'Malley v. Brierley, 477 F.2d 785 (3d Cir. 1973); Perkins v. Salafia, 338 F.Supp. 1325 (D.Conn.1972); Curtis v. Peerless Ins. Co., 299 F.Supp. 429, 434 (D.Minn.1969); United States v. Biloxi Municipal School Dist., 219 F.Supp. 691 (S.D.Miss.1963), aff'd, 326 F.2d 237 (5th Cir.), cert. denied, 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964); Brown v. Board of Trustees of La Grange Independent School Dist., 187 F.2d 20 (5th Cir. 1951); Mosher v. Beirne, 237 F.Supp. 684 (E.D.Mo. 1964), aff'd, 357 F.2d 638 (8th Cir. 1966). See also, Denman v. Wertz, 372 F.2d 135 (3d Cir. 1967); Tyree v. Smith, 289 F.Supp. 174 (E.D.Tenn.1968).

4. We note, also, as to the relatives' claim (Count III), which seeks relief based solely on the alleged damage to their reputations, that 42 U.S.C. § 1983 does not mandate actions based upon defamation. Heller v. Roberts, 386 F.2d 832 (2d Cir. 1967); Gorman v. Lukowsky, 431 F.2d 971 (6th Cir. 1970); El-Em Band of Pomo Indians of Sulphur Bank Rancheria v. 49th Dist. Agricultural Fair Ass'n, 359 F.Supp. 1044 (N.D.Cal.

1973); Hopkins v. Wasson, 227 F.Supp. 278 (E.D.Tenn.1962), aff'd, 329 F.2d 67 (6th Cir.), cert. denied, 379 U.S. 854, 85 S.Ct. 102, 13 L.Ed.2d 57 (1964).

5. The order expired February 5, 1974.

6. See, Daub v. Board of Regents, 33 A.D.2d 964, 306 N.Y.S.2d 869 (3d Dep't 1970); Walker v. American Institute of Architects, 15 A.D.2d 776, 224 N.Y.S.2d 708 (1st Dep't 1962); Howard v. Wilbur, 166 F.2d 884 (6th Cir. 1948); Metzger v. O'Donoghue, 53 App.D.C. 107, 288 F. 461 (1923).

7. Winnick v. Manning, 460 F.2d 545, 548 n. 3 (2d Cir. 1972); Hatter v. Los Angeles City High School Dist., 452 F.2d 673 (9th Cir. 1971); Jones v. Snead, 431 F.2d 1115 (8th Cir. 1970); Esteban v. Central Missouri State College, 415 F.2d 1077, 1079 n. 1 (8th Cir. 1969), cert. denied, 398 U.S. 965, 90 S. Ct. 2169, 26 L.Ed.2d 548 (1970); Sullivan v. Houston Independent School Dist., 307 F. Supp. 1328, 1338 (S.D.Tex.1969).

8. See also, Sibron v. New York, 392 U.S. 40, 58–59, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

employment or admission to college or graduate school.[9]

We think the collateral consequences of the decedent's suspension here would have supported an action by him under § 1983 to set aside the order, even after it expired. Thus, it may be, as plaintiffs allege, that had he lived, his suspension would have caused a reduction in the royalties from the sale of his books, and it is plain that it would have seriously impaired his law practice, for:

> "There is no asset to be possessed by the lawyer so dear or so valuable as his known character, or reputation for honesty, integrity, and sincerity of purpose. When it is wrongfully assailed, he is damaged, not only in the finer sensibilities, but also in a financial measure impossible to accurately estimate." [10]

■ We hold, therefore, that the action is not mooted by the expiration of the suspension order and that the decedent could assert a § 1983 claim if he were living.

■ Defendants contend, nevertheless, that such a claim is personal and does not survive to the decedent's estate. Congress did not provide expressly for survival of civil rights claims. However, 42 U.S.C. § 1988 has been construed to provide that, in the absence of specific federal law on the subject, courts should look to state law on survival of actions.[11] Since all causes of action for injury to person or property survive in New York, except those for punitive damages,[12] the § 1983 action survives the decedent's death and may be asserted by his estate.

■ Defendants also claim that state judges are immune from suit under 42 U.S.C. § 1983. While the Supreme Court has held that state judges are immune from damage claims under § 1983,[13] it has yet to decide whether they are immune from a suit seeking injunctive relief. Our Court of Appeals, however, has held that:

> "[N]o sound reason exists for holding that federal courts should not have the power to issue injunctive relief against the commission of acts in violation of a plaintiff's civil rights by state judges acting in their official capacity." [14]

Thus, in this circuit, at least, state judges are not immune from suits for injunctive relief under § 1983, and since plaintiffs seek only injunctive and declaratory relief, we reject defendants' immunity argument.

Defendants also contend that principles of comity and res judicata bar this action. Relying on a line of cases, beginning with Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923),[15] they argue that we lack

---

9. See, e. g., Hatter v. Los Angeles City High School Dist., supra, 452 F.2d at 674.

10. In re Lincoln, 102 Cal.App. 733, 283 P. 965 (1929).

11. Brazier v. Cherry, 293 F.2d 401 (5th Cir.), cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961) ; Pritchard v. Smith, 289 F.2d 153 (8th Cir. 1961) ; Holmes v. Silver Cross Hosp. of Joliet, Ill., 340 F.Supp. 125 (N.D.Ill.1972) ; Johnson v. Wilkinson, 315 F.Supp. 773 (W.D.Mo.1970) ; Galindo v. Brownell, 255 F.Supp. 930 (S.D.Cal.1966) ; Salazar v. Dowd, 256 F.Supp. 220 (D.Col. 1966).

12. New York Estates, Powers and Trusts Law § 11–3.2 (17B McKinney's Consol.Laws 1967, c. 17–b).

13. Pierson v. Ray, 386 U.S. 547, 553–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

14. Erdmann v. Stevens, 458 F.2d 1205, 1208 (2d Cir.), cert. denied, 409 U.S. 889, 93 S. Ct. 126, 34 L.Ed.2d 147 (1972). Accord, Law Students Civil Rights Research Council, Inc. v. Wadmond, 299 F.Supp. 117, 123–124 (S.D.N.Y.1969), aff'd, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971) ; Martarella v. Kelley, 349 F.Supp. 575, 593 (S.D.N.Y. 1972).

15. See also, Roy v. Jones, 484 F.2d 96 (3d Cir. 1973) ; Coogan v. Cincinnati Bar Ass'n, 431 F.2d 1209 (6th Cir. 1970) ; MacKay v. Nesbett, 412 F.2d 846 (9th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969), rehearing denied, 397 U.S. 1004,

jurisdiction over this action because plaintiffs are, in effect, asking us to review the state court proceedings for possible constitutional error, a review which lies exclusively in the jurisdiction of the Supreme Court by certiorari. They argue further that, even if we have jurisdiction to decide the constitutional issues raised by plaintiffs, those issues were presented to, and decided by, the New York courts in the disciplinary proceeding against the decedent, and paintiffs are, therefore, barred by res judicata from raising them again here.

██ We agree with defendants (as do plaintiffs) that if plaintiffs were merely seeking to relitigate constitutional questions previously raised and decided in the state proceedings, this action would be barred, either by res judicata or comity.[16] And, if the decedent had failed to raise the constitutional issues in the state courts, and his failure constituted a waiver of his constitutional rights, that waiver would bar determination of the constitutional issues here.[17] In this case, however, we have grave doubts whether any court has ever determined the constitutional questions raised here, and, although under normal circumstances we would refuse to decide these issues on the merits, we feel it is appropriate to do so in this situation.[18]

Plaintiffs' argument that decedent was "deprived of due process of law by the defendants in suspending decedent from the practice of law based upon charges for which he was given no notice or opportunity to be heard" rests on the contention that the Appellate Division's finding of misconduct was predicated upon ethical violations not specifically alleged in the petition or elsewhere. As a result, plaintiffs contend, the constitutional issues now raised did not arise until after the decision of the Appellate Division and, therefore, neither the Appellate Division nor any other court had any opportunity to decide them. We agree [19] and, therefore, proceed to the merits.

II

The petition of the Bar Association alleged that decedent had attempted to perpetrate a fraud on Mexican and American courts by paying money to a Mexican national and Mexican public officials to obtain and defend the nullification of a Mexican divorce decree. The alleged misconduct occurred while the decedent's firm was counsel to Lewis

90 S.Ct. 1111, 25 L.Ed.2d 417 (1970) ; Jones v. Hulse, 391 F.2d 198 (8th Cir.), cert. denied, 393 U.S. 889, 89 S.Ct. 206, 21 L.Ed.2d 167 (1968) ; Gately v. Sutton, 310 F.2d 107 (10th Cir. 1962).

16. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) ; Thistlethwaite v. City of New York, 497 F. 2d 339 (2d Cir. 1974) ; Tang v. Appellate Div. of Sup. Ct., First Dep't, 487 F.2d 138 (2d Cir. 1973), cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).

17. Lombard v. Board of Education of City of New York, 502 F.2d 631 (2d Cir., 1974).

18. See Jones v. Hulse, *supra*, 391 F.2d at 202 ("Perhaps under appropriate circumstances a disbarred attorney could resort to the federal courts for relief.").

We are also loathe to invoke res judicata here because of the recent suggestion by the Court of Appeals in *Lombard, supra*, that the doctrine should not be applied to issues of procedural due process under § 1983, particularly where the effect would be to deny plaintiffs any hearing on the issues in any court. Lombard v. Board of Education of City of New York, supra, 502 F.2d 635–637.

Moreover, we note that in virtually every case in which *Rooker* has been invoked in a disciplinary setting, either the state courts have exhaustively determined the constitutional issues, or the plaintiff has failed to follow the normal appellate process, including application for certiorari to the Supreme Court, preferring instead to bring an independent federal action. *E. g.*, Roy v. Jones, *supra*, 484 F.2d at 99 ; Coogan v. Cincinnati Bar Ass'n, *supra*, 431 F.2d at 1211 ; Jones v. Hulse, *supra*, 391 F.2d at 201–202 ; Gately v. Sutton, *supra*, 310 F.2d at 107. That is not the case here.

19. See Appendix annexed.

Rosenstiel in Mr. Rosenstiel's celebrated matrimonial battles with his wife, Susan. The petition alleged that decedent paid money to certain Mexican officials and a Mexican woman to obtain a nullification of a decree divorcing Susan Rosenstiel from her previous husband.

The petition alleges the facts supporting these allegations in detail. As noted earlier, Referee Trosk, after hearings, found that the charges "had been sustained." Plaintiffs claim no violation of decedent's rights up to that point in the proceedings. They contend, however, that the following language from the Appellate Division's opinion constituted a finding of misconduct based on charges never disclosed to decedent:

"The evidence, within the framework of the charges, does establish serious professional misconduct in a course of conduct tending to exert improper personal influence upon the courts, in a lack of candor and fairness with the courts, in fostering unjustified and questionable litigation and defenses, in the improper solicitation of employment, and in general in conduct designed to bring dishonor upon the courts and on the administration of justice. (See Canons 3, 15, 22, 27, 29, 30, 31 and 32 of the Canons of Professional Ethics.)" 35 A.D.2d at 445, 316 N.Y.S.2d at 945.

Plaintiffs claim this language constitutes a finding by the Appellate Division that decedent violated the Canons of Professional Ethics, although he had never been notified that he was accused of doing so.

There can be no doubt that Javits was entitled to notice of the charges against him and to have an opportunity to be heard. Disciplinary proceedings are quasi-criminal in nature,[20] and lawyers subject to such proceedings are entitled to the elements of procedural due process.[21]

"No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948).[22]

However, due process is a flexible concept, and its requirements vary with the type of proceeding involved.[23] It is not necessary, therefore, that the petition comply with all the requirements of a criminal indictment. All that is required is that it be sufficient to inform the decedent of the nature and substance of the charges against him and permit him to answer them.[24]

With these principles in mind, we turn to an analysis of the due process issue in this case. Although some petitions initiating disciplinary proceedings identify the canons alleged to have been violated,[25] this is not always the case, and where the petition is sufficiently specific to make the lawyer aware

---

20. In re Ruffalo, 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); Erdmann v. Stevens, *supra*, 458 F.2d at 1209.

21. In re Ruffalo, *supra*, 390 U.S. at 550, 88 S.Ct. 1222.

22. Accord, In re Ruffalo, *supra*, 390 U.S. at 550, 88 S.Ct. 1222; In re Gault, 387 U.S. 1, 33, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948); De Jonge v. Oregon, 299 U.S. 353, 362 (1937).

23. Hannah v. Larche, 363 U.S. 420, 440, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

24. Bell v. Burson, 402 U.S. 535, 540, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Woodbury v. McKinnon, 447 F.2d 839, 844 (5th Cir. 1971). Cf. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Goldberg v. Kelly, 397 U.S. 254, 266–267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sostre v. McGinnis, 442 F.2d 178, 198 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972).

25. *E. g.*, In re Connelly, 19 A.D.2d 466 (1963).

of the charges against him, due process does not require more.[26]

■ Here, the petition recited in detail the actions of decedent and his agents alleged to constitute misconduct. Plaintiffs do not dispute this. But they claim decedent was entitled to know, in advance, the specific canons he was accused of violating. Listing the canons, however, would have added nothing to the petition, for the facts alleged gave decedent ample and specific notice of the charges against him. Moreover, we think the citation of the canons by the Appellate Division and the description of decedent's professional misconduct in terms of the canons was meant only to give fuller meaning to the court's finding of "serious professional misconduct." The court's opinion thus only makes the familiar observation that a course of misconduct, although alleged in a single charge, breached several of the Canons.

Plaintiffs seek to compare this case to In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). There, the Supreme Court found that an attorney's right to procedural due process had been violated in the course of disbarment proceedings. *Id.* at 552, 88 S.Ct. 1222. *Ruffalo*, however, is a far cry from this case.

Petitioner, in *Ruffalo*, was accused in state proceedings of twelve counts of misconduct, including two of soliciting clients through an agent. Petitioner and the agent testified upon the hearing that the agent merely investigated cases for the lawyer, including some involving the agent's employer. Thereafter, a thirteenth count, based on petitioner's hiring the agent to investigate his own employer, was added to the charges. Petitioner was subsequently found guilty on Count 13 and six others, but the Court of Appeals for the Sixth Circuit later disbarred Ruffalo solely on the basis of Count 13. The Supreme Court reversed, holding that the proceedings:

"become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh." 390 U.S. at 551, 88 S. Ct. at 1226.

The facts here are simply not comparable to *Ruffalo*. The nature of the charge of misconduct against Javits did not change in the middle of the proceedings, as in *Ruffalo*, thus introducing into the case elements of unfair surprise and entrapment totally lacking here.

The citation of the canons by the Appellate Division really added nothing to the charge made against decedent. It merely provided an explanation of why the misconduct was sufficient to justify suspension. Surely, plaintiffs cannot contend that citation of the canons in the petition, rather than in the opinion of the Appellate Division, would have directed a change in the decedent's strategy when the charge against him was perpetrating a fraud on the courts, an obvious breach of professional ethics. As an attorney, decedent surely knew, without reference to the canons, that such conduct constituted a breach of ethics, and the recitation of facts and description of the charge in the petition were sufficient to enable him to determine the basis for the Bar Association's charge of misconduct and to defend himself.[27]

In short, decedent had ample notice of the charges against him and an adequate opportunity to be heard and to rebut them. We find, therefore, no violation of his rights to procedural due process and accordingly hold that defendants are entitled to summary judgment on Count I.

### III

■ Count IV of the complaint seeks a declaratory judgment that § 90 of the New York Judiciary Law, as re-

---

**26.** Woodbury v. McKinnon, *supra*, 447 F.2d at 844.

**27.** Woodbury v. McKinnon, *supra*.

lated to CPLR §§ 5501 et seq. and 5601 et seq., are unconstitutional, as in violation of the due process clause, because they do not provide for independent review of constitutional claims in disciplinary proceedings.[28] Plaintiffs appear to interpret "independent review" to mean review by some body other than the Appellate Division. Due process, however, has never been held to require that a state provide appellate courts or a right to appellate review, even in a criminal case.[29] Thus, even if New York provided no review whatsoever of disciplinary proceedings, that procedure would be constitutionally valid.

New York, moreover, does provide for review of disciplinary proceedings, both as of right and on discretionary appeal. Thus, where a substantial constitutional question is directly involved in the decision of the Appellate Division, an appeal as of right may be taken to the Court of Appeals. CPLR § 5601(b)(1). Appeal to the Court of Appeals, by permission of the Appellate Division or the Court of Appeals, is also provided for in CPLR § 5602(a). Therefore, since New York's review procedure in disciplinary proceedings is consonant with due process, summary judgment must be granted for defendants on Count IV.

### IV

Finally, plaintiffs, in Count V, attack Judiciary Law § 90 and CPLR §§ 5501 and 5601 et seq. as unconstitutional because they deny to attorneys the equal protection of the laws. Plaintiffs claim that Article 78 of the Civil Practice Law and Rules permits all professionals subject to disciplinary proceedings, except attorneys, to seek review of the proceedings by a body independent of the administrative agency disciplining the professional.

We note, first, that attorneys are not denied a review of disciplinary proceedings. See Part III, *supra*. Plaintiffs, however, seem to regard the failure of the Legislature to make Article 78 proceedings available to attorneys, as well as other professionals, as a violation of the equal protection clause. We disagree.

As discussd in Part III, a state is not constitutionally compelled to provide a system for appellate review. Once a state affords an appellate process, however, the equal protection clause forbids it to deny an appeal capriciously or arbitrarily to some litigants while granting it to others.[30] This does not mean that the equal protection clause requires different classes of people to be treated alike. Rather, equal protection requires only that a legislative classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."[31] And it is clear that a Legislature may regulate different professions in different ways where appropriate.[32] Thus, in Semler v. Oregon State Bd. of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086

28. Plaintiffs have not moved for summary judgment on Counts IV and V and have not responded to defendants' motion to dismiss on these counts. However, since they have not explicitly abandoned them, we feel it our duty to reach the merits of these claims.

29. Ortwein v. Schwab, 410 U.S. 656, 660, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); Lindsey v. Normet, 405 U.S. 56, 77, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956); McKane v. Durston, 153 U.S. 684, 687–688, 14 S.Ct. 913, 38 L.Ed. 867 (1894).

30. Lindsey v. Normet, *supra*, 405 U.S. at 77, 92 S.Ct. 862; Griffin v. Illinois, *supra*, 351 U.S. at 18, 76 S.Ct. 585.

31. F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957).

32. Pordum v. Board of Regents of State of New York, 491 F.2d 1281 (2d Cir. 1974).

(1935), where the Supreme Court sustained a statute prohibiting certain types of dental advertising, it said:

> "Nor has plaintiff any ground for objection because the particular regulation is limited to dentists and is not extended to other professional classes. The state was not bound to deal alike with all these classes, or to strike at all evils at the same time or in the same way. It could deal with the different professions according to the needs of the public in relation to each."

We think that under the above standard, the denial of Article 78 proceedings to attorneys does not violate equal protection.[33]

■■■ The intimate and delicate relationship between courts and lawyers has long justified the judiciary's careful scrutiny of the integrity and qualifications of those who practice before it.[34] Thus, it would be peculiar, if not unreasonable, for the New York Legislature to place responsibility for disciplining attorneys and review of disciplinary proceedings elsewhere than in the courts. No other body is as well qualified or as interested in determining whether an attorney is qualified to practice law.

We find no violation of equal protection in the procedure for review of disciplinary proceedings adopted by New York and, therefore, grant summary judgment to defendants on Count V.

Accordingly, treating defendants' motion to dismiss as a motion for summary judgment, the motion is granted as to all counts in the complaint, and the complaint is hereby dismissed. Plaintiffs' cross-motion for summary judgment on Counts I, II and III is denied.

So ordered.

## APPENDIX

Under New York law, an appeal may be taken as of right only if there is a dissent in the appellant's favor, or a reversal of the court below, or a substantial constitutional question is directly involved in the decision of the Appellate Division. N. Y. CPLR § 5601 (7B McKinney 1963). Since neither of the first two conditions was present here, the third condition necessarily constituted the only basis for the Appellate Division's decision that the decedent could appeal to the Court of Appeals as of right.

The Court of Appeals disagreed, however, holding that "no substantial constitutional question is directly involved." 28 N.Y.2d at 924, 323 N.Y.S.2d 172, 271 N.E.2d 701. That Court further observed that decedent "may move for reargument of his appeal in the Appellate Division if he believes, as he asserts, that some of the charges sustained were found without adequate notice to him." *Id.* at 924, 323 N.Y.S.2d at 172, 271 N.E.2d at 702.

Defendants argue that this cryptic opinion was a decision on the merits by the Court of Appeals that the constitutional issues now raised by plaintiffs

---

33. In a case involving disciplining of tenured teachers, under N. Y. Education Law § 305(7) (16 McKinney's Consol.Laws 1969, c. 16), it was held that the Legislature's failure to detail procedural safeguards or to define with precision "professional misconduct" with regard to teachers, in contrast to its promulgation of clear procedural standards and a precise definition of misconduct with regard to other professions, did not violate equal protection. Pordum v. Board of Regents of State of New York, *supra,* 491 F.2d at 1286. The Court of Appeals said: "[T]he teaching profession differs from these other professions in many respects, including the special vulnerability of the client population, the high duty of care owed by the state to that group, and the unique responsibility which the state has to provide an effective system of education. These distinctions justify the legislative determination that different treatment with respect to the disciplining of the different professionals is required." 491 F.2d at 1286.

34. Theard v. United States, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957); Erdmann v. Stevens, *supra.*

were insubstantial. Although there is room for defendants' argument, we think the correct interpretation of the Court of Appeals' opinion is that no constitutional issue was "directly involved" in the decision of the Appellate Division and, hence, there could be no appeal as of right.

New York case law under CPLR § 5601 and its predecessors, Civil Practice Act §§ 589 and 590, has established that the constitutional issues must be "not only directly but necessarily involved in the decision of the case." Matter of Haydorn v. Carroll, 225 N.Y. 84, 88, 121 N.E. 463, 464 (1918); Weinstein-Korn-Miller, New York Civil Practice ¶ 5601.-09 (rev. ed. 1973). As noted above, the constitutional issue had not been raised in the Appellate Division until after its decision and, thus, played no part in its original decision, which decedent was authorized to appeal. Moreover, the Court of Appeals' reference to "reargument" of the appeal in the Appellate Division was, we think, an invitation to the decedent to present his constitutional questions to the Appellate Division.

Apparently misunderstanding the Court of Appeals' reference to "reargument," decedent again moved, unsuccessfully, not for reargument of his appeal but for leave to appeal to the Court of Appeals.[1] The Court of Appeals also denied leave, and certiorari was denied by the Supreme Court. Defendants seem to argue that the denials of leave to appeal and certiorari have res judicata consequences and bar this action. This simply is not good law.

The Supreme Court has repeatedly stated that a denial of certiorari is not an adjudication on the merits and has no res judicata effect. Brown v. Allen, 344 U.S. 443, 457–458, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Id. 344 U.S. at 491–492, 73 S.Ct. 397 (opinion of Frankfurter, J., concurring);[2] United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923). Similarly, the New York Court of Appeals has held that denial of leave to appeal is discretionary and is not the equivalent of a decision on the merits. Matter of Marchant v. Meade-Morrison Mfg. Co., 252 N.Y. 284, 169 N.E. 386 (1929); reargument denied, 253 N.Y. 534, 171 N.E. 770, appeal dismissed, 282 U.S. 808, 51 S.Ct. 104, 75 L. Ed. 725 (1930).

Thus, neither the state courts nor the Supreme Court appear to have decided the constitutional issues on the merits and, under the circumstances, we think it would be a grave injustice to hold that they may not be raised by plaintiffs here. Lombard v. Board of Education of City of New York, supra, 502 F.2d at 635–636. We hold, therefore, that neither Rooker nor the doctrine of res judicata bars this action.

---

1. Defendants claim that this failure to raise the constitutional issues on the merits in the Appellate Division constitutes a waiver of those issues and of Javits' constitutional rights. Since we think it clear that the Court of Appeals' decision was open to the interpretation adopted by Javits, we refuse to find this action barred by an inadvertent failure to decipher properly an unclear reference in the Court of Appeals' opinion. In fact, under *Lombard*, Javits' action hardly can be said to approach a waiver of his rights, since he pursued them to the Supreme Court on certiorari.

2. "We have repeatedly indicated that a denial of certiorari means only that, for one reason or another which is seldom disclosed, and not infrequently for conflicting reasons which may have nothing to do with the merits and certainly may have nothing to do with any view of the merits taken by a majority of the Court, there were not four members of the Court who thought the case should be heard." 344 U.S. at 492, 73 S.Ct. at 439 (Frankfurter, J.).