Douglas F. Young, J.
I. Background
On September 9, 1974, the Appellate Division, Second Department suspended plaintiff from the practice of law. (Matter of Gerzof, 45 AD2d 450.) He moved for leave to appeal to the Court of Appeals in the Appellate Division. Thereafter, plaintiff moved for leave to appeal in the Court of Appeals and also sought to appeal as of right under CPLR 5601 (subd b). Those motions were denied and the appeal was dismissed. (Matter of Gerzof, 35 NY2d 644, 35 NY2d 855, 35 NY2d 856.)* He then instituted an action under section 1983 of title 42 of the United States Code in the United States District Court for the Eastern District of New York, seeking a declaration that section 90 of the New York Judiciary Law, under which his suspension was ordered, was violative of the United States Constitution. Pursuant to section 2281 of title 28 of the United States Code, District Judge Jack B. Weinstein impaneled a three-Judge court and stayed the suspension order pending the conclusion of that action.
On October 16, 1975, the three-Judge court, in a decision by Judge Neaher, dismissed plaintiff’s complaint on the ground that "under prevailing standards of federalism and comity, abstention is * * * appropriate.” (Mildner v Gulotta, 405 F Supp 182, 185.) Judge Ñeaher, fn what must be ruled dictum, found no merit in the constitutional claims. Judge Moore filed a concurring opinion in which he urged dismissal of plaintiff’s claim on the merits. Judge Weinstein filed a lengthy dissenting opinion. The decision of the three-Judge court was affirmed by the United States Supreme Court. (Gerzof v Gulotta, 425 US 901.) Justices Marshall and Powell stated that they "would postpone consideration of the question of jurisdiction to a hearing of the case on the merits.” (Id.)
On April 14, 1976, the Appellate Division stayed the effective date of the suspension order until September 1, 1976. Thereafter, this action for a declaration that section 90 is unconstitutional under both the United States and New York *771 State Constitutions was commenced. Plaintiff requested an order permanently enjoining defendants from carrying out the suspension order. Plaintiffs request that the Appellate Division continue the stay pending the termination of this action was denied in an order dated July 30, 1976.
The defendants now move to dismiss the complaint, pursuant to CPLR 3211 (subd [a], pars 5, 7). They claim that this action is barred by the doctrine of res judicata and that the complaint fails to state a cause of action. Plaintiff cross-moves to treat this as a motion for summary judgment under CPLR 3211 (subd [c]).
II. Res Judicata
A. The Federal Claims
Defendants’ assertion that this action is barred by the doctrine of res judicata is based upon the contention that the three-Judge court has already ruled on the merits of plaintiffs constitutional claims and that this ruling on the merits has been affirmed by the United States Supreme Court. I find that this contention is incorrect.
The doctrine of res judicata, simply stated, is that a final judgment on the merits, rendered by a court of competent jurisdiction, is conclusive as to the rights of the parties in subsequent actions involving the same cause of action. (Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304, 307; 5 Weinstein-Korn-Miller, NY Civ Prac, pars 5011.10, 5011.11.) An important corollary of this doctrine is that the party asserting the defense of res judicata must prove that the prior judgment was rendered on the merits. (Watts v Swiss Bank Corp., 27 NY2d 270; Clark v Scovill, 198 NY 279.) In the instant case, defendants have failed to meet their burden of showing that the prior decisions were on the merits.
The three-Judge court did not base its dismissal of plaintiffs Federal action on the merits of his constitutional claims. Although there was some discussion of the merits of those claims, the majority opinion concluded that it was improper for the Federal court to interfere in a State attorney disciplinary matter. (Mildner v Gulotta, 405 F Supp 182, 196, supra.)
In his concurring opinion, Judge Moore agreed the case should be dismissed but disagreed with the finding that abstention under Younger v Harris (401 US 37), was proper and stated that, "I would dismiss on the merits” (Mildner v *772 Gulotta, 405 F Supp at 199, supra). Clearly, if the three-Judge court had decided plaintiff’s constitutional claim on the merits, there would have been no need for Judge Moore's opinion.
The United States Supreme Court has recently held that the dismissal of a complaint by a three-Judge court based upon the Younger abstention doctrine is not a decision on the merits of a plaintiff’s constitutional attack upon a State statute. (MTM, Inc. v Baxley, 420 US 799.) In reaching its decision, the court relied on Gonzalez v Employees Credit Union (419 US 90, 99), where issues such as abstention were deemed to be issues "short of the merits”.
Defendants have attached great significance to the fact that the court in MTM concluded that a dismissal on the ground of abstention strips it of jurisdiction under section 1253 of title 28 of the United States Code and thus requires the dismissal of an appeal brought under that statute. The statute provides for a direct appeal to the Supreme Court from the order of the three-Judge court "granting or denying * * * an interlocutory or permanent injunction”. Defendants argue that, in light of MTM, the Supreme Court’s affirmance in the instant action indicates that the Supreme Court believed that the three-Judge court’s decision reached the merits of plaintiff’s constitutional claim. This contention is not persuasive. Firstly, MTM clearly states that the dismissal of a complaint based upon abstention is not on the merits. Secondly, this argument overlooks the opinion of Justices Marshall and Powell in plaintiff’s Supreme Court case. These two Justices stated that they would have postponed consideration of jurisdiction until the case was heard "on the merits”. (Gerzof v Gulotta, 425 US 901, supra, emphasis added.) The logical implication of the language used by these distinguished Justices is that the Supreme Court upheld the lower court’s dismissal without determining the merits.
Defendants also rely heavily on Becker v Levitt (81 Misc 2d 664) as authority for the proposition that a Federal court’s determination that it lacks jurisdiction over a particular case following a discussion of that case’s merits creates a res judicata bar to the hearing of the same claim in a State court. Becker is readily distinguishable from the instant case. In Becker, the United States District Court rejected plaintiff’s application for a three-Judge court to hear his claim that section 54 of the State Finance Law was unconstitutional and dismissed the complaint. The United States Court of Appeals *773 for the Second Circuit affirmed. (Becker v Levitt, 489 F2d 1087.) The basis for the dismissal was that the Federal court was without jurisdiction because the claim did not present a substantial Federal question. (See US Code, tit 28, §§ 1331, 2281.)
"In order to determine whether or not a three-judge court should be convened we must study the relevant decisional law. If we find there is some validity to the claim, a three-judge court must decide the constitutional questions involved in the case. City of New York v. Richardson, 473 F.2d 923 (2d Cir.), cert, denied, sub nom. Lavine v. Lindsay, 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973). On the other hand, if it appears on examination of the cases that the claim is 'essentially frivolous,’ 'wholly unsubstantial’ or 'obviously frivolous,’ we have no alternative other than to deny the application for a three-judge court and dismiss the case for lack of jurisdiction. Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938).” (Becker v Levitt, 489 F2d 1087, 1090, supra.)
Thus, in Becker, the dismissal on jurisdictional grounds was based entirely upon a finding that the plaintiffs claims lacked merit. In the instant action, however, the Federal court’s dismissal was not based upon such a determination. Judge Weinstein specifically ruled that plaintiffs claims were substantial enough to require the convening of a three-judge court. The complaint was dismissed because of the Younger doctrine, a doctrine not at all dependent upon a determination on the merits.
Even if there were a question as to whether the three-judge court dismissed the complaint on the merits, res judicata would not be applicable. As stated previously, defendants bear the burden of proving the elements of res judicata. Thus, the existence of any doubt as to whether the previous judgment was on the merits precludes dismissal under CPLR 3211 (subd [a], par 5).
B. The State Claims
Plaintiff correctly points out that the claims raised under the New York State Constitution were never before the Federal court and cannot possibly be barred by res judicata. This issue was succinctly dealt with by Mr. Justice Niehoff in Becker v Levitt (81 Misc 2d 664, supra). "It is well settled that *774 State courts are not bound by Federal decisions in cases in which a statute is tested against the provisions of the Federal Constitution, notwithstanding that those provisions are essentially, if not completely, identical to State constitutional provisions.” (81 Misc 2d at 668.)
Accordingly, defendants’ motion under CPLR 3211 (subd [a], par 5) must be denied.
III. The Merits
Plaintiff alleges that the procedure for disciplining attorneys set forth in section 90 violated his constitutional rights to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and section 6 of article I of the New York State Constitution. There is an additional allegation that these procedures violated his right to equal protection of the law, as guaranteed by the Fourteenth Amendment and section 11 of article I of the New York State Constitution.
Some of the statements made by defendants’ counsel in argument before this court on this motion might be interpreted as indicating that plaintiff had never raised constitutional issues in the State courts prior to the inception of this proceeding. If this were a fact the plaintiff might well be held to have waived his right to initiate a claim on the merits of the constitutional issues by reason of his failure timely to raise these questions. (Dodge v Cornelius, 168 NY 242; 8 NY Jur, Constitutional Law, § 56.) An examination of the proceedings in the Appellate Division Second Department and the Court of Appeals reveals, however, that review was unsuccessfully sought by plaintiff herein on constitutional grounds. As for the issue of deprivation of right to appeal, that could not have been raised until plaintiffs applications for the right to appeal had been denied. Hence the constitutional issues should be entertained by this court.
A. Plaintiff’s Rights to a Fair Hearing
There is no question but that attorneys are entitled to due process of law in disciplinary proceedings. (Spevack v Klein, 385 US 511.) However, it is also well settled that due process is a flexible concept and a determination of the particular procedural rights which it requires depends upon the nature of the proceeding and the interests of both the government and the individual. (Goldberg v Kelly, 397 US 254; Cafeteria *775 Workers v McElroy, 367 US 886, 895, rehearing den 368 US 869.) In McElroy the Supreme Court stated (p 895): "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.”
In weighing the competing interests involved in attorney disciplinary proceedings, it is manifest that the sanctions which an attorney faces are, in the words of Judge Weinstein, "devastating”. (Mildner v Gulotta, 405 F Supp 182, 210, supra.) His livelihood and his reputation in the community and among his peers are severely threatened. (See Erdmann v Stevens, 458 F 2d 1205, 1209-1210, cert den 409 US 889.) It is for this reason that the Supreme Court has characterized attorney disciplinary proceedings as being "quasi-criminal [in] nature.” (Matter of Ruffalo, 390 US 544, 551, rehearing den 391 US 961.)
However, without attempting to make light of the attorney’s interest in the proceedings, it cannot be said that all procedural rights afforded criminal defendants under the due process clause of the Fourteenth Amendment need be afforded attorneys in disciplinary proceedings. (Matter of Kelly, 23 NY2d 368.) In Kelly, Judge Breitel limited the holding of Ruffalo (supra), to its facts, and rejected the contention that the quasi-criminal nature of attorney disciplinary proceedings mandates that an attorney be granted procedural rights identical to those of criminal defendants. "Respondents also rely on the recent case of Matter of Ruffalo (390 U.S. 544), arguing that the Ruffalo case destroyed any distinctions between disciplinary proceedings and criminal proceedings for the purpose of applying the privilege against self incrimination. The Ruffalo case holds only that since disciplinary proceedings are adversary proceedings of a 'quasi-criminal’ nature, due process requires that there be notice of the disciplinary charges before the proceedings are begun (390 U.S., p. 551). The case, therefore, hardly stands for an equation of criminal and disciplinary proceedings, a most unlikely view.” (Id. at 384.)
Several Federal cases decided after Ruffalo support Judge Breitel's conclusion. In Matter of Ming (469 F2d 1352), the court pointed to the singular nature of attorney disciplinary proceedings and reaffirmed its earlier decision in Matter of Echeles (430 F2d 347), where it held that such proceedings *776 were sui generis. "Preliminarily, it would be well to note that disbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, and result from the inherent power of courts over their officers. Such proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent. They are not for the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice.” (Id. at 349.)
Thus, the proceedings under section 90 need not be measured by the strict standards which due process imposes in criminal actions. When scrutinized under less stringent standards, the procedural rights afforded the plaintiff do, indeed, comply with the requirements of due process.
Plaintiff’s first contention is that he was denied due process because the Appellate Division acted as the Grand Jury, prosecutor, Judge and Jury. In Matter of Sarisohn (21 NY2d 36), the Court of Appeals rejected out of hand a similar contention raised in the context of a judicial removal proceeding. "Appellant also argues that there is an absence of standards for removal; that the court sat as charge-maker, prosecutor, and trier of the facts; and that the court had previously demonstrated prejudice against appellant, for which reason it should not have tried the matter. These are contentions that go to the traditional nature of removal proceedings and at this late date do not merit discussion.” (21 NY2d 48.)
Plaintiff also contends that the Appellate Division, which sat as a trial court, should have heard the witnesses and observed their demeanor before rendering its determination. He claims that the procedures which provided for a determination based upon a transcript and reported findings violated his right to a meaningful hearing. Plaintiff states that the authority for the contention is set forth in Judge Weinstein's dissenting opinion in Mildner v Gulotta (405 F Supp 182, 212-213, supra). It is important to note that judge Weinstein relied heavily upon cases involving criminal proceedings in the portion of his opinion which deals with this question. (See e.g., Berger v California, 393 US 314; Barber v Page, 390 US 719.) Moreover, none of the few civil cases cited by Judge Weinstein holds that proceedings in which a referee to report hears testimony and presents his findings to the court are *777 constitutionally infirm. The procedures followed in attorney disciplinary proceedings are substantially similar to those followed in civil actions when a referee to report is appointed. (CPLR 4320.) Plaintiff has not cited nor have I found any authority for the proposition that those procedures are unconstitutional.
Plaintiff also claims that section 90 unconstitutionally denied him the right to present oral argument before the trier of facts and refers to Judge Weinstein's opinion as authority for that claim. The relevant portion of Judge Weinstein's opinion relies almost entirely upon criminal cases. (See Mildner v Gulotta, pp 213-215, supra [Weinstein, J., dissenting].) The two civil cases cited, Williams v Brooklyn Elevated R. R. Co. (126 NY 96) and Lyman v Fidelity & Casualty Co. (65 App Div 27), are not persuasive. Williams (supra) dealt with the question of the extent to which a court may limit the scope of summation. Lyman (supra) held that a court improperly prohibited counsel for a surety company to present argument independently of its principal. Neither case deals with the real question here. That question is whether or not an individual is denied the right to a meaningful hearing where he is permitted oral argument and a summation before a referee, rather than the trial court. Again, I have found no authority which holds that such procedures are unconstitutional.
Plaintiff also cites the fact that the Appellate Division was not bound by the findings of the referee. This, too, is similar to the procedure in civil cases heard before a referee, which have not been held invalid.
Finally, plaintiff argues that he was entitled to a statement of reasons for the Appellate Division decision. This overlooks the fact that the Appellate Division’s opinion (45 AD2d 450, supra) states that it found that the charges against the plaintiff were sustained by the evidence contained in the record and the referee’s report. The referee’s report contains detailed findings of fact, much as is required by CPLR 4320 in civil actions.
It is important to review what rights plaintiff was afforded. He received notice of the charges against him and was given an opportunity to confront and cross-examine adverse witnesses during a hearing before Mr. Justice Silberman, the Special Referee. He was represented by counsel who had an opportunity to present a summation to the Referee. The Referee prepared a report and a supplemental report which *778 contained, detailed findings of fact and conclusions respecting the specified charges.
Moreover, a full transcript of the proceedings before the Referee was submitted to the Appellate Division and plaintiff filed an extensive and detailed memorandum to that court. The Appellate Division’s opinion recites that it reviewed the evidence before Mr. Justice Silberman and found that it supported the charges preferred against plaintiff.
Thus, plaintiff was afforded a fair and open hearing and the evidence presented before the Referee was reviewed by the ultimate trier of fact. It cannot be concluded that his due process rights were violated by this procedure. (See Javits v Stevens, 382 F Supp 131; Matter of Sarisohn, 21 NY2d 36, supra; Emslie v State Bar of Calif., 11 Cal 3d 210.)
B. Plaintiff’s Right to Appellate Review
Plaintiff also claims that the absence of the right to appeal from the suspension order deprived him of his constitutional rights. The law is well settled that neither due process nor equal protection requires that the State provide litigants with appellate review. (Griffin v Illinois, 351 US 12, 18; Ohio v Akron Park Dist., 281 US 74, 80.) Appellate review is, however, required where a litigant has been denied due process in the trial court. (Ohio, supra.) Moreover, if appellate review is afforded some litigants and arbitrarily and capriciously denied to others, the equal protection clause is violated. (Lindsey v Normet, 405 US 56, 77.) The determination of plaintiff’s appellate review claims must be made within this framework.
As has been previously demonstrated, the disciplinary procedures established by section 90 and the rules promulgated thereunder (22 NYCRR Part 691) do not violate plaintiff’s right to due process under law. Accordingly, it cannot be said that the absence of an absolute right to appeal from the suspension order violated plaintiff’s right to due process. (Javits v Stevens, supra, p 140; Friedman v State of New York, 24 NY2d 528.)
Plaintiff also claims that his right to equal protection is violated by the fact that New York law affords all professionals other than attorneys appellate review of decisions rendered against them in disciplinary proceedings. (CPLR 7801 et seq.) This claim is buttressed by the fact that all civil litigants are entitled to one appeal as of right. (See, e.g., CPLR 5701, UDCA, § 1701 et seq.) However, the existence of different *779 treatment for different individuals is not, in and of itself, a violation of the right to equal protection. (Semler v Dental Examiners, 294 US 608; Pordum v Board of Regents of State of N. Y., 491 F2d 1281; Javits v Stevens, supra.) Equal protection is not violated unless it is shown that there is no reasonable basis for differing treatment of different classes of individuals. Thus, in Royster Guano Co. v Virginia (253 US 412, 415) the United States Supreme Court stated that equal protection requires only that a legislative classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.” The principle involved was aptly stated by Judge MacMahon in Javits v Stevens (382 F Supp 131, 140, supra): "it is clear that a Legislature may regulate different professions in different ways where appropriate.”
The court finds that under these standards, section 90 does not violate the equal protection clause of either the United States or the New York State Constitutions. This was made clear by Judge MacMahon in Javits v Stevens (supra), and by Judge Neaher in Mildner v Gulotta (405 F Supp 182, supra). Although a State court is not bound by the pronouncements of Federal decisions respecting the constitutionality of statutes (Becker v Levitt, 81 Misc 2d 664, 668, supra), the reasoning of these two learned Judges is highly persuasive.
Both Judge MacMahon and Judge Neaher pointed out that because of the "intimate and delicate” relationship between courts and lawyers, the New York Legislature has, in enacting section 90, seen fit to vest original jurisdiction over the discipline of attorneys in the very courts which license them and before which they practice. (Javits v Stevens, supra, p 141; Mildner v Gulotta, supra, p 193.) Thus, as stated by Judge Neaher in the case just cited, the denial of absolute appeal as of right does not violate the equal protection clause because the vesting of original jurisdiction in the Appellate Division affords an attorney an initial determination by a court, rather than an administrative agency. "Having vested the initial determination function with the courts rather than an administrative agency, the legislature might well have concluded that the obligatory judicial review normally — if not presumptively — required for administrative decisions was not required when the initial determination was by a court.” (Mildner v Gulotta, supra, p 194.)
*780 Whether this legislative determination was unwise or capable of improvement or was unfair is not the thrust of a proper equal protection analysis. The real question is whether the basis for the classification is reasonable. (Mildner v Gulotta, supra, p 194.) It is well settled that classifications made by the Legislature are presumed to be reasonable and the party who assails such a classification bears the burden of demonstrating that it is unreasonable. (Harman v Board of Educ., 300 NY 21, 31, mot for rearg den 300 NY 644; Matter of Calzadilla, 29 AD2d 152.)
Furthermore, a court of original jurisdiction such as this should exercise great caution before overruling statutes of long standing and frequent usage. (People v Anonymous, 56 Misc 2d 725; National Psychological Assn. for Psychoanalysis v University of State of N. Y., 18 Misc 2d 722, affd 10 AD2d 688, affd 8 NY2d 197, app dsmd 365 US 298.) This court should invalidate a statute only where the conclusion of unconstitutionality is apparent, or when the statute is patently unconstitutional. (Dunbar v Dunbar, 80 Misc 2d 744, 748.) This is not such an instance.
Accordingly, defendants are granted summary judgment. Plaintiff’s motion for a stay of the Appellate Division’s suspension order is denied.

 The Appellate Division’s denial of leave to appeal is not reported.